ORIGINAL

FILED

2008 JUL 25 P 1: 18

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

E-FILING

1  ROBERT B. HAWK (Bar No. 118054)
   robert.hawk@hellerehrman.com
2  HELLER EHRMAN LLP
   275 Middlefield Road
3  Menlo Park, California 94025
   Telephone: (650) 324-7000
4  Facsimile:  (650) 324-0638

5
   CHAD R. FULLER (Bar No. 190830)
6  chad.fuller@hellerehrman.com
   CHRISTOPHER J. LONGMAN (Bar No. 234473)
7  chris.longman@hellerehrman.com
   HELLER EHRMAN LLP
8  4350 La Jolla Village Drive, 7th Floor
   San Diego, CA  92122
9  Telephone: (858) 450-8400
10 Facsimile: (858) 450-8499

11
   Attorneys for Defendant
12 LONG BEACH ACCEPTANCE CORP.

13

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                        (SAN JOSE DIVISION)
17

18
                                        C08  03582
19 TAVANT TECHNOLOGIES, INC.
                                Case No.:
20                     Plaintiff,
                                        NOTICE OF REMOVAL OF ACTION
   v.                                   UNDER 28 U.S.C. SEC. 1441(b)
21 LONG BEACH ACCEPTANCE CORP.          (DIVERSITY)
22                     Defendant.

23

24

25

26

27

28

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE THAT defendant Long Beach Acceptance Corp. ("LBAC") hereby removes the civil action captioned Tavant Technologies, Inc. v. Long Beach Acceptance Corp., Case No. 108CV115504 from the Superior Court of the State of California, County of Santa Clara (the "State Action") to the United States District Court for the Northern District of California.

In support of this Notice of Removal, LBAC states as follows:

1. The State Action was filed on June 20, 2008. A copy of the State Action Complaint is attached hereto as Exhibit A.

2. The first date upon which LBAC received a copy of the State Action Complaint was June 30, 2008, when LBAC's agent for service of process in California was personally served with a copy of the State Action Complaint and summons. A copy of the State Action summons and Civil Cover Sheet are attached hereto as Exhibit B.

3. This Notice of Removal is timely because it has been filed within 30 days of receipt by LBAC of a first pleading showing a basis for removal.

**JURISDICTION**

4. This is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and is one which may be removed to this Court by the defendant LBAC pursuant to 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states in which the matter in controversy exceeds $75,000 exclusive of interest and costs.

5. As alleged in the State Action Complaint, the plaintiff Tavant Technologies, Inc. ("Tavant") is Washington corporation with a principal place of business in Santa Clara, California. Ex. A, ¶1.

6. The defendant LBAC is a Delaware corporation with its principal place of business in Fort Worth, Texas.

7. The State Action Complaint also names Does 1-50 as defendants. Pursuant to 28 U.S.C. § 1441(a) the citizenship of defendants sued under fictitious names is to be disregarded.

1

8.      The amount in controversy exceeds $75,000 exclusive of interests and costs because Tavant alleges in the State Action Complaint that, as a result of LBAC alleged acts, Tavant has suffered at least $1,222,111.63 in damages.  Ex. A, ¶¶ 17, 21, 24, 26, 31.

## INTRADISTRICT ASSIGNMENT

9.      The State Action Complaint alleges that "the written agreement that is the subject of this litigation was entered into and was substantially performed in the County of Santa Clara." Ex. A, ¶2.  Intradistrict assignment to the San Jose division of this Court is thus proper pursuant to Civil L.R. 3-2.

Respectfully submitted,

July 25, 2008                                    HELLER EHRMAN LLP

By _____
                        Robert B. Hawk
                        Chad R. Fuller
                        Christopher Longman

ATTORNEYS FOR
LONG BEACH ACCEPTANCE CORP.

2





1   MICHAEL J. IOANNOU (SBN 95208)
    ELISE R. VASQUEZ (SBN 201190)
2   KIMBERLY F. WHITFIELD (SBN 179717)
    ROPERS, MAJESKI, KOHN & BENTLEY
3   50 W. San Fernando Street, Suite 1400
    San Jose, CA  95113
4   Telephone:  (408) 287-6262
    Facsimile:  (408) 918-4501
5
    Attorneys for Plaintiff
6   TAVANT TECHNOLOGIES, INC.

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SANTA CLARA

10

11  TAVANT TECHNOLOGIES, INC.,          CASE NO. 1 0 8 C V 1 1 5 5 0 4

12              Plaintiff,              **COMPLAINT FOR BREACH OF
                                        WRITTEN CONTRACT, BREACH OF
13      v.                              IMPLIED COVENANT OF GOOD
                                        FAITH AND FAIR DEALING,
14  LONG BEACH ACCEPTANCE CORP., a      SERVICES PROVIDED, ACCOUNT
    Delaware corporation, qualified to do business    STATED, QUANTUM MERUIT.**
15  in the State of California; and DOES 1 through
    50, inclusive,
16
                Defendants.
17

18

19      Plaintiff TAVANT TECHNOLOGIES, INC. ("TAVANT" or "Plaintiff") states:

20                      **JURISDICTION AND VENUE**

21      1.      TAVANT is a Washington Corporation qualified to do business in the State of

22  California with a principal place of business at 3101 Jay Street, Suite 101, Santa Clara, CA

23  95054, and is in the business of, among other things, providing custom software development,

24  licensing, and maintenance.

25      2.      TAVANT alleges on information and belief that at all relevant times to the

26  allegations herein, defendant LONG BEACH ACCEPTANCE CORP. ("LBAC") was, and is, a

27  Delaware corporation qualified to do business in the State of California.  TAVANT is informed

28  and believes and thereon alleges that defendant LBAC is in the business of originating or

RCI/3398986.2/NB                    - 1 -

                        **COMPLAINT**

1   purchasing, selling, and servicing consumer motor vehicle retail installment contracts, loans or

2   other receivables within the State of California, including, specifically, Santa Clara County.

3   TAVANT further alleges on information and belief that LBAC is the subsidiary of

4   AMERICREDIT, a foreign corporation, qualified to do business in the State of California.

5       3.     TAVANT is ignorant of the true names and capacities of defendants sued herein as

6   DOES 1 through 50, inclusive, and therefore sues said defendants by such fictitious names.

7   TAVANT will amend this Complaint to allege their true names and capacities when ascertained.

8   TAVANT is informed and believes and thereon alleges that each of the fictitiously named

9   defendants is responsible in some manner for the occurrences herein alleged, and that the

10  damages as herein alleged were proximately caused by said defendants.  TAVANT is informed

11  and believes and thereon alleges that defendants, and each of them, were at all times herein

12  mentioned the agents of their co-defendants, and in doing the things hereinafter alleged, were

13  acting in part within the course and scope of said agency and with the permission and consent of

14  their co-defendants, and each of them.

15      4.     Venue and jurisdiction are proper in the County of Santa Clara, State of California,

16  as Plaintiff TAVANT is headquartered in the City of Santa Clara with its offices located at 3101

17  Jay Street, Suite 101, Santa Clara, CA  95054.  Further, the written agreement that is the subject

18  of this litigation was entered into and was substantially performed in the County of Santa Clara.

19  Said written agreement expressly provides that the Agreement shall be governed by the laws of

20  the State of California.

21      5.     Effective August 15, 2006, Plaintiff TAVANT and Defendant LBAC entered into

22  a written Technology Agreement ("Technology Agreement" or "Agreement") for the

23  development and licensing of custom software ("Tavant Software"), based upon certain software

24  specifications of LBAC and proprietary technology of TAVANT, for use by LBAC in the

25  consumer auto loan industry.  A true and correct copy of the Technology Agreement is attached

26  hereto as Exhibit "A" and incorporated herein by reference.

27      6.     Upon oral agreement of the parties, and prior to the execution of the written

28  Technology Agreement, TAVANT began performing substantial custom software development

RCI/3398986.2/NB                                        - 2 -.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    services at the direction of LBAC. Upon and after execution of the Technology Agreement,

2    TAVANT continued to perform its obligations and development of the software.

3        7.    Pursuant to the terms of the Agreement, the parties agreed that compensation for

4    the custom-developed software and license would be based on a total price of $3,000,000 (Three

5    Million Dollars). The Agreement further provides that $1,737,888.30 would be due at the time of

6    execution of the Agreement since substantial development services had already been performed

7    by TAVANT prior to execution of the written Agreement between the parties; $600,000 would be

8    payable upon Acceptance of the Software; and $622,111.63 would be paid at the end of the

9    warranty period.

10       8.    TAVANT alleges on information and belief that beginning in November 2006,

11   Defendant LBAC began reviewing, evaluating and testing the custom software developed by

12   TAVANT for LBAC under the terms of the subject Agreement.

13       9.    Pursuant to the terms of the Technology Agreement, specifically Section 12.4,

14   upon termination for convenience by LBAC, any deliverables, in process, prior to the effective

15   date of termination must be paid for by LBAC by immediate payment to Plaintiff TAVANT.

16       10.   On or about January 25, 2007, LBAC, pursuant to Section 12.2 of the Technology

17   Agreement, provided TAVANT thirty (30) days' notice of its intention to terminate the

18   Agreement, effective February 26, 2007, causing any and all amounts incurred for development

19   of the deliverables prior to February 26, 2007 that are in-process to become due and payable. As

20   of the date of termination by LBAC, the in-process deliverables were complete and available for

21   acceptance by LBAC.

22       11.   On or about April 24, 2007, counsel for TAVANT sent LBAC and its parent

23   company, AMERICREDIT, a letter demanding payment of all outstanding sums. On or about

24   April 26, 2007, counsel for AMERICREDIT, on behalf of both AMERICREDIT and LBAC,

25   advised counsel for TAVANT that LBAC and AMERICREDIT disputed that any sums were due

26   and owing under the terms of the Technology Agreement. On or about July 10, 2007, counsel for

27   TAVANT reiterated demand for payment of all outstanding sums. A true and correct copy of the

28   demand letters are collectively attached hereto as Exhibit "B" and incorporated herein by this

RCI/3398986.2/NB                          - 3 -

COMPLAINT

reference.

12.     As of the date of this Complaint, LBAC and its parent company, AMERICREDIT, have refused to make current the debt to TAVANT.

### FIRST CAUSE OF ACTION
#### (Breach of Written Contract)
#### (Against Defendants LBAC, and Does 1-50, Inclusive)

13.     TAVANT incorporates by reference paragraphs 1 through 12, inclusive, as though fully set forth herein.

14.     Pursuant to the oral agreement, and as embodied in the Agreement, TAVANT agreed to create, develop, and license custom software, referred to as Tavant Software, based upon certain software specifications of LBAC and proprietary technology of TAVANT, for use by LBAC in the consumer auto loan industry. As consideration for the services performed, LBAC agreed to pay TAVANT development and licensing fees.

15.     TAVANT fully performed all conditions, covenants and promises required by it on its part to be performed, in accordance with the terms and conditions of the Agreement, or has been excused from non-performance due to the conduct and non-performance of Defendant LBAC.

16.     In violation of their promises and obligations under the Agreement, Defendant LBAC breached said Agreement by failing to pay the amounts due and owing for the custom software development services provided.

17.     As a direct and proximate result of the above-described breaches and conduct, TAVANT has been damaged in the amount of $1,222,111.63 (One Million Two Hundred Twenty-two Thousand One Hundred Eleven Dollars and Sixty-three cents) exclusive of the interest which continues to accrue from January 25, 2007, until the final resolution of this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant(s), and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
#### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
#### (Against Defendants LBAC and Does 1-50, Inclusive)

18.     TAVANT incorporates by this reference paragraphs 1 through 17, inclusive, as

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/3398986.2/NB

- 4 -

1   though fully set forth herein.

2       19.     Implied in the Technology Agreement between the parties, as there is in every

3   agreement, was a covenant by Defendant(s), and each of them, that they would act in good faith

4   and deal fairly with TAVANT, and would do nothing to deprive TAVANT of the benefits of said

5   Agreement.  Defendant LBAC has breached that covenant by failing to deal in good faith by,

6   among other things, (1) failing and refusing to pay for TAVANT's software development

7   services, which were performed by TAVANT for LBAC; (2) making illusory promises about

8   working in good faith to resolve any disputes or misunderstandings between the parties; (3)

9   making illusory promises to pay TAVANT for the in-process deliverables, when in fact, LBAC

10  had no intention of doing so; and (4) making threats against the shareholders of TAVANT in an

11  effort to obtain a collateral advantage in the course of negotiations and rightful requests for

12  payment of sums owed to TAVANT.

13      20.     TAVANT has fully performed all conditions, promises and covenants required by

14  it on its part to be performed, in accordance with the terms and conditions of the Agreement, or

15  has been excused from non-performance due to the conduct and non-performance of Defendant

16  LBAC.

17      21.     As a direct and proximate result of Defendants' conduct, TAVANT has been

18  damaged in the amount of $1,222,111.63 (One Million Two Hundred Twenty-two Thousand One

19  Hundred Eleven Dollars and Sixty-three cents), with interest accruing at the legal the rate from

20  the date which the obligations became due, to wit, January 25, 2007, until the final resolution of

21  this matter.

22      WHEREFORE, TAVANT prays for judgment against Defendant(s), and each of them, as

23  hereinafter set forth.

24                          **THIRD CAUSE OF ACTION**
                        **(Common Count for Services Provided)**
25              **(Against Defendants LBAC and Does 1-50, Inclusive)**

26      22.     TAVANT incorporates by reference paragraphs 1 through 21, inclusive, as though

27  fully set forth herein.

28      23.     Within the past twenty-four (24) months, Defendant(s), and each of them, became

RC1/3398986.2/NB                        - 5 -

COMPLAINT

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  indebted to TAVANT for work, labor, and services performed by TAVANT at the special request

2  of LBAC, who agreed to pay such sums totaling $3,000,000.00 (Three Million Dollars).

3       24.     Only part of the above total sum, the amount of $1,737,888.30, has been paid to

4  TAVANT, although demands for all amounts owed have been made. There is now due and

5  owing the sum of $1,222,111.63 (One Million Two Hundred Twenty-two Thousand One Hundred

6  Eleven Dollars and Sixty-three cents), with interest accruing at the legal rate from the date

7  which the obligations became due, to wit, January 25, 2007, until the final resolution of this

8  matter.

9       WHEREFORE, TAVANT prays for judgment against Defendant(s), and each of them, as

10  hereinafter set forth.

### FOURTH CAUSE OF ACTION
#### (Account Stated)
#### (Against Defendants LBAC and Does 1-50, Inclusive)

13       25.     TAVANT incorporates by reference paragraphs 1 through 24, inclusive, as though

14  fully set forth herein.

15       26.     Commencing on or about January 25, 2007, accounts were stated in writing by and

16  between TAVANT and Defendant LBAC, and on such statements a total balance of

17  $1,222,111.63 (One Million Two Hundred Twenty-two Thousand One Hundred Eleven Dollars

18  and Sixty-three cents) was found to be due and owing to TAVANT from Defendant LBAC,

19  which amount continues to accrue interest from January 25, 2007, until the final resolution of this

20  matter.

21       27.     Although demanded by TAVANT from LBAC, LBAC has failed to pay the

22  amounts found due and owing to TAVANT.

23       WHEREFORE, TAVANT prays for judgment against Defendant(s), and each of them, as

24  hereinafter set forth.

### FIFTH CAUSE OF ACTION
#### (Quantum Meruit)
#### (Against Defendants LBAC and Does 1-50, Inclusive)

27       28.     TAVANT incorporates by reference paragraphs 1 through 27, inclusive, as though

28  fully set forth herein.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/3398986.2/NB

- 6 -

COMPLAINT

29.    From as early as August 15, 2006, and prior to that date, TAVANT performed custom software development services pursuant to the Technology Agreement, for which TAVANT has not been fully compensated. Defendant LBAC knew that these services were being provided and knew that in process deliverables were complete and available for acceptance by LBAC, and further promised to pay the reasonable value of such services.

30.    Although demanded by TAVANT of LBAC, and its parent company AMERICREDIT, the fair and reasonable value of TAVANT's services has not been paid.

31.    The remaining balance representing the fair and reasonable value of the services provided to defendants is $1,222,111.63 (One Million Two Hundred Twenty-two Thousand One Hundred Eleven Dollars and Sixty-three cents), with interest accruing at the legal the rate, from the date which the obligations became due, to wit, January 25, 2007, until the final resolution of this matter.

WHEREFORE, TAVANT prays for judgment against Defendant(s) and each of them, as hereinafter set forth.

As to the First through Fourth Causes of Action:

A.    For compensatory damages according to proof;

B.    For interest at the legal rate from the date sums became due, January 25, 2007, until the date that this matter is finally resolved;

C.    For such other relief as the Court may deem just and proper.

As to the Fifth Cause of Action:

A.    For compensatory damages according to proof at trial;

B.    For further damages in an amount as yet unascertained;

C.    For interest according to proof; and

D.    For such other relief as the Court may deem just and proper.

1    Dated: June ___, 2008                          ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                                    By: _____
                                                         MICHAEL J. IOANNOU
4                                                        KIMBERLY F. WHITFIELD
                                                         Attorneys for Plaintiff
5                                                        TAVANT TECHNOLOGIES, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5398986.2/NB                              - 8 -

                                          COMPLAINT



**EXHIBIT A**

**Tavant Technology Agreement**
**LBAC Profile**

Tavant Technologies, Inc. welcomes Long Beach Acceptance Corp. as a valued customer.

By signing below, each party agrees to the terms of the following (collectively called the "Agreement"):

       (a)    This Profile,
       (b)    Technology Agreement – Basic General Terms; and
       (c)    Exhibits A thru Exhibit F.

The following coordinators will represent each party for the fulfillment of the terms of the Agreement and each agrees to notify

| Tavant Contact: | LBAC Contact: |
|---|---|
| Name: SARVESH MAHESH | Name: David C. Kellogg |
| Title: CEO | Title: Vice President, CIO |
| Phone: 408-519-5454 | Phone: 201-477-7525 |
| Facsimile: 408-519-5401 | Facsimile: 201-262-0528 |
| Email: Sarvesh. Mahesh @ tavant .cu | Email: dkellogg@lbac.com |
| Mailing address: 3114 Scott Blvd. Santa Clara, CA 95054 | Mailing address: One Mack Centre Drive Paramus, NJ 07652 |

*Agreed to*:  Tavant Technologies, Inc.

By _____
          Authorized Signature

*Agreed to*:  Long Beach Acceptance Corp.

By _____
          Authorized Signature

Name (type or Print): SARVESH MAHESH

Title: CEO

Name (type or Print): Stephen W Pooch

Title: President.

Tavant address:  Tavant Technologies, Inc.
                3114 Scott Blvd.
                Santa Clara, CA  95054

Long Beach Acceptance Corp.
One Mack Centre Drive
Paramus, NJ 07652

doc3137.doc

1

**Exhibit** A
**Page** 1 **of** 45

**TECHNOLOGY AGREEMENT**
**BASIC GENERAL TERMS**

This TECHNOLOGY AGREEMENT is entered into as of August 15, 2006 (the "Effective Date") by and between Tavant Technologies, Inc., a Washington corporation ("Tavant"), and Long Beach Acceptance Corp., a Delaware corporation ("LBAC") (Sometimes Tavant and LBAC are individually referred to as a "Party" and collectively referred to as the "Parties").

WHEREAS, LBAC desires Tavant to develop certain software that is referred to as the Tavant Software (defined below) and the Tavant Software includes or is based upon certain software specifications of LBAC and proprietary technology of Tavant, and makes permitted use of embedded software from third parties, which third party software is referred to as the Embedded Software (defined below);

WHEREAS, when complete, the Parties expect the Tavant Software to include, among other things, a consumer motor vehicle receivables servicing system;

WHEREAS, LBAC is or anticipates being in the business of, among other things, originating or purchasing, selling and servicing consumer motor vehicle retail installment contracts, loans or other receivables (collectively, "Auto Loans" and individually an "Auto Loan");

WHEREAS, LBAC desires to obtain a license to the Tavant System in the consumer Auto Loan industry and desires Tavant to use the Tavant Software to provide certain development, maintenance and integration; and

WHEREAS, Tavant desires to provide such a license and such services according to the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the promises and the mutual covenants and conditions stated herein, the Parties agree as follows:

1.   **Definitions**

Capitalized terms not otherwise defined herein shall have the following meanings:

1.1.   "Acceptance" is defined in Section 6.5.

1.2.   "Affiliate" means an entity that presently or at any future time controls, is controlled by or is under common control with another entity. For purposes of the previous sentence, one entity controls another entity if the former owns directly or indirectly more than fifty percent (50%)of the outstanding voting stock of the controlled entity (or of other equity or ownership interest in the event that such controlled entity is other than a corporation).

1.3.   "*Confidential Information*" means all LBAC's customer information and any other information provided to one Party ("Recipient") by the other Party

doc3137.doc    2    Exhibit  A  
Page  2  of  45

("Discloser") in writing or other tangible form, other than information that is marked non-confidential at the time of disclosure, and all information traditionally recognized as proprietary trade secrets or information which a reasonable person would appreciate as confidential in any other form including oral, electronic or any other medium that is retrievable in perceivable format and which is disclosed in any other manner, other than information that is identified as non-confidential at the time of disclosure or is designated as non-confidential in a writing delivered to the Recipient. "Confidential Information" shall expressly include, but not be limited to, the following: "Non-Public Personal Information" about LBAC's consumers and/or customers within the meaning of the Federal Financial Privacy Law, 15 U.S.C. §§ 6801-6809, any applicable state laws, and related federal or state regulations, all as now in effect or hereafter imposed, passed or promulgated, (all such federal and state laws and regulations collectively, the "Privacy Acts and Regulations"); non-public information about the Tavant Software and services; business plans of either Party; market intelligence of either Party; the source code and underlying design/architecture of any Tavant software, product or program; and the source code and underlying design/architecture of any LBAC product (including licensed third party software) or program. Confidential Information shall not include any information or material that the Recipient can prove through reliable evidence: (a) was known or became available to the Recipient on a non-confidential basis from any source other than the Discloser, provided that that such source is not known by the Recipient to be prohibited from transmitting the information to the Recipient by a contractual or other obligation, (b) is or becomes publicly known other than as a result of a disclosure by the Recipient or any of its Representatives, or (c) is independently developed by Recipient without use or access to the Confidential Information of Discloser.

1.4.   *"LBAC Site"* means LBAC's site powered by the Tavant Software, Tavant Software Configuration, and Embedded Software and accessed by End Users through intranets, specialized portals, and/or other private access mechanisms.

1.5.   *"Documentation"* means Tavant's manuals, if any, describing the Tavant Software or the Embedded Software, in printed or electronic form.

1.6.   *"Eligible Countries"* means worldwide.

1.7.   *"End User"* means LBAC's officers, employees, and agents; employees of LBAC's Affiliates; employees of LBAC's brokers and correspondents; employees of LBAC's business development partners; and LBAC's customers who are authorized by LBAC to access and use the LBAC Site.

1.8.   *"Embedded Software"* means any third party software or middleware, as further described in Exhibit D, embedded in the Tavant Software and that is required, in Tavant's reasonable discretion, for the proper functioning of the Tavant Software. "Embedded Software" also means the documentation for such Embedded Software.

Exhibit ___A___

Page _3_ of _45_

1.9.   *"License Keys"* means the passwords, if any, provided by Tavant which allow LBAC to use the Tavant Software.

1.10.   *"Platform"* means a specific combination of hardware, operating system software, and other software (e.g., application server, window manager, Java Virtual Machine, etc.) as recommended by Tavant and updated and modified from time to time by Tavant and LBAC. The current configuration of the Platform is described in <u>Exhibit E.</u>

1.11.   **[Intentionally Deleted]**.

1.12.   *"SSM Services"* means certain standard software maintenance services which may be provided by Tavant to LBAC upon the Parties' agreement as further described in Exhibit C.

1.13.   *"Tavant Trademark"* means Tavant's trademarks, trade names, logos and service marks, if any.

1.14.   *"Tavant Software"* means any software program that is created by Tavant ( excluding the Embedded Software except as otherwise specified in this Agreement or in any exhibit hereto) as further described in Exhibit A, including all updates and upgrades and new releases thereto created by Tavant that relate to or can be used by LBAC, as provided by Tavant in accordance with this Agreement.

1.15.   *"Tavant Software Configuration"* means those modifications to the Tavant Software that are configured for LBAC based on LBAC's specified requirements.

1.16.   *"Tavant Source"* means source code for the Tavant Software and the "Development Environment" for the Tavant Software, including without limitation all related documentation (including configuration documentation and database schema, database design documentation including documentation of links to programming code, documentation of user interface designs, documentation of integration points, and documentation of job scheduling), instructions and all materials reasonably necessary for a reasonably trained programmer to operate, maintain and support the Tavant Software, including without limitation all such source code and documentation for the Embedded Software unless expressly excepted in Exhibit D. The "Development Environment" means the programming documentation, use case scenarios, build instructions and scripts, configuration information, schematics, designs, and flow charts and any Tavant-proprietary software tools, libraries, linkers, utilities, compilers, embedded software and other programs used by Tavant to develop, maintain or implement the Tavant Software, including instructions for compiling and linking the source code into executable forms or for building an executable version of the software. In addition to all the foregoing, Tavant Source includes any and all workflows, data dictionaries (maps/models), and software design documents for the Tavant Software; custom development documents and

documents relating to underlying processes, design, code and supporting technology as related to the Tavant Software; all notes, documentation, processes, business logic and knowledge of support issues (cases) and resolutions as related to the Tavant Software; any works in progress for system enhancement including white papers, note and model code as related to the Tavant Software; hardware requirements to the above-mentioned components; implementation guides/notes and specifications as related to the Tavant Software. Tavant Source includes an identification of all hardware requirements, including without limitation such requirements for operating in a stand alone or hosted environment and will further include a list of the primary programmers involved in the development and maintenance of the Tavant Software.

1.17.    **"Tavant System"** means the Tavant Software, Tavant Source, Embedded Software and Documentation.

1.18.    **"Transaction"** means an executable command that the Tavant Software will process according to various routines and procedures defined in the programming. Such commands may be individual or, as in the case of End of Period, grouped or even global in nature.

2.    **Assignment**

Except as expressly authorized, the Parties agree that neither may transfer or assign this Agreement or delegate its obligations hereunder without the prior written consent of the other Party, which consent, in the case of a transfer or assignment by LBAC, shall not be unreasonably withheld, conditioned or delayed by Tavant. Notwithstanding the foregoing, LBAC is entering into this Agreement in reliance upon Tavant's performing the software development and other services outlined herein. Other than as part of a permitted assignment as set forth below, Tavant acknowledges that LBAC may refuse to allow Tavant to delegate its obligations hereunder to a third party and may obtain specific performance by Tavant. If LBAC merges or consolidates with another entity or if all or substantially all of LBAC's assets are acquired by another entity, whether in connection with a public offering of LBAC's stock or otherwise, LBAC may assign this Agreement to the surviving or acquiring entity without Tavant's prior consent, and subject to the proviso in the first sentence of Section 3.1(A), the surviving or acquiring entity shall succeed to all of LBAC's rights hereunder without relicensing the Tavant System or taking any other or further action; but Tavant will not be required to expend additional resources to provide equivalent SSM Services to support an increased user base or increased use for the surviving or acquiring entity. If Tavant merges or consolidates with another entity or if all or substantially all of Tavant's assets are acquired by another entity, whether in connection with a public offering of Tavant's stock or otherwise, Tavant may assign this Agreement to the surviving or acquiring entity without LBAC's prior consent, and the surviving or acquiring entity shall succeed to all of Tavant's rights hereunder without taking any other or further action, provided that Tavant may not assign this Agreement or any portion thereof to any person or entity which, at the time of such assignment, Tavant knows after reasonable inquiry, including consultation with LBAC, is in competition with LBAC in any line of business. *This Section 2 shall survive expiration or termination of the Agreement.*

Exhibit    A
Page    5    of    45

● ●

**3.    Grant of Licenses**

    **3.1.    Software License**

        A.  Subject to the conditions herein, and upon acceptance of the Tavant System by LBAC, Tavant grants LBAC and each of its Affiliates (so long as such Affiliate remains an Affiliate) a perpetual, nonexclusive license to use the Tavant System (subject, with respect to the Embedded Software, to Section 6.2) with an unlimited number of End Users in the Eligible Countries solely for LBAC's own business purposes; provided that following a merger or consolidation of LBAC or an acquisition of all or substantially all of LBAC's stock or assets, the use of the Tavant System by LBAC's Affiliates (or by the Affiliates of the surviving or acquiring entity, as applicable) other than LBAC's wholly-owned subsidiaries shall be limited to the Auto Loan business.  LBAC and each of its Affiliates may use the System for its and its customers' benefit (subject, with respect to LBAC's Affiliates other than LBAC's wholly-owned subsidiaries, to the proviso in the immediately preceding sentence) and may also use the Tavant System, as it may be modified, in its business with third party providers for which LBAC or such Affiliate provides Auto Loan assistance, including but not limited to a financial institution for whose Auto Loans LBAC or such Affiliate is a contract servicer.  LBAC shall also have the right, in connection with such permitted uses, to copy, maintain, support, create derivative works of, reverse engineer, decompile, disassemble, modify or change in any way the Tavant System and may do so through its employees or through its contractors who are under confidentiality restrictions at least as restrictive as those contained herein.  At no point shall LBAC have the right to re-license or sub-license or otherwise transfer or distribute or provide the Tavant System to any third party unless explicitly permitted in this Section 3 or in Section 2.

        B.  Certain Additional Rights.  Upon the request of LBAC and the mutual agreement of the Parties with respect to the reasonable consideration to be paid by LBAC to Tavant, Tavant shall modify this license to enable LBAC and its wholly owned subsidiaries to use the Tavant System in financial services markets or financial services businesses other than the Auto Loan business.  The Parties agree to enter good faith negotiations regarding the consideration to be paid by LBAC to Tavant in such an event. The Parties agree that in all circumstances such consideration shall not include any amounts for the use of the core platform of the Tavant System, but only such amounts that relate to customization of the Tavant System needed for application of the same in the new market or business or such other reasonable amount that the parties, in good faith, shall mutually determine.

*Provided LBAC is not then in material breach of this Agreement, this Section 3.1, Section 3.2 and Section 3.4 will survive expiration or termination of this Agreement but excluding termination under Section 12.2.*

    **3.2.    Additional Copies.**  LBAC may make an unlimited number of copies of the Tavant System solely in connection with LBAC's use of the Tavant System.  The

Exhibit     *A*
Page  *U*  of  *45*

Parties hereby agree that any and all copies of the Tavant System shall be deemed to be Tavant's Confidential Information.

3.3. **Modifications.** Although LBAC may modify the Tavant System without Tavant's approval, the Parties hereby agree that upon any non-Tavant approved modification of the Tavant Software, any warranties set forth herein shall terminate as to features affected by such modifications. LBAC, however, may elect to continue to receive any SSM Services but Tavant shall not be responsible for any differences between the then current version of the Tavant Software as maintained by Tavant and the non-Tavant approved modified Tavant Software. LBAC shall provide Tavant with notice of modifications in such detail as may be reasonably necessary for the parties to delineate the scope of Tavant's responsibilities pursuant to the previous two sentences and Tavant may charge additional SSM Fees to the extent that SSM Services are complicated by the LBAC modification.

3.4. **Documentation.** Subject to the terms and conditions of this Agreement, Tavant grants LBAC and its Affiliates a right to use the Documentation in a manner consistent with the above uses of the Tavant Software and to reproduce all or portions of the Documentation, whether in printed or electronic format, and to alter such copies from the originals, in each case without causing such copies to bear the same copyright notices as the originals.

3.5. **Restrictions on LBAC.** Other than as permitted herein, LBAC shall not (a) sell, lease, assign, sublicense or otherwise transfer the Tavant System; (b) duplicate, reproduce, or copy the Tavant System; or (c) disclose, divulge, or otherwise make the Tavant System available to any third party. *This Section 3.5 shall survive expiration or termination of the Agreement.*

4. **Compensation**

4.1. **Fees.** The pricing for the licenses and services herein shall be as set forth in Exhibit B. Tavant shall send invoices to LBAC in accordance with Exhibit B. LBAC shall remit payment of all undisputed amounts within thirty (30) days following receipt of the related invoice. LBAC agrees to notify Tavant within thirty (30) days of the date of receipt of the invoice of any disputes that LBAC may have with a particular invoice.

4.2. **Late Fees.** Any undisputed amounts due under this Agreement not received by Tavant by the due date shall be subject to a service charge of the lesser of one and a half percent (1.5 %) per month or the maximum rate permitted by law.

4.3. **Taxes.** LBAC shall be responsible for all taxes related to the performance of the services or the granting of the licenses herein, other than those taxes on Tavant's income, Tavant's gross receipts and Tavant's payroll. The payments by LBAC to Tavant shall not be reduced for any and all taxes.

Exhibit____A____

Page____7____of__45__

4.4.    **Software Delivery.**  Upon Acceptance of the Tavant System and payment of all fees due at the time of Acceptance, Tavant shall deliver to LBAC the Tavant Source for the then current version of the Tavant Software and the Embedded Software (subject to Section 1.16 and Exhibit D).  Tavant shall thereafter make the Tavant Software, Tavant Software Configuration, Tavant Source and Embedded Software (subject to Section 1.16 and Exhibit D) available in a downloadable form such that LBAC may take delivery of the Tavant Software and the corresponding Tavant Source, as portions of the same or new versions thereof are completed, in each case in an electronic format. LBAC have an absolute right to receive modifications of the Tavant Software and the Embedded Software and corresponding Tavant Source (subject to Section 1.16 and Exhibit D) until expiration of the Warranty Period, and thereafter so long as there is then in force and effect an SSM Services agreement.

5.    **Ownership**

5.1.    **Tavant Software.**  Except as noted in this Sub-Section, Tavant shall retain all ownership of the Tavant System, including all modifications and derivative works thereof created solely by Tavant or jointly by Tavant and LBAC, subject to the licenses granted herein.  LBAC shall own all intellectual property rights in and to all modifications and derivative works of the Tavant System created solely by LBAC.  However, Tavant shall own the intellectual property right in and to the underlying Tavant System. LBAC hereby assigns to Tavant all right, title and interest (including all intellectual property rights) in and to jointly developed modifications and  derivative works of the Tavant System.

6.    **Configurations and Load Testing**

6.1.    **Performance Criteria; Hardware Configuration.**  LBAC and Tavant shall agree to a required response time that the Tavant Software will provide for users and for automated processes.  Such response time shall be measured by a set number of Transactions per second.  Prior to Acceptance or productive use by LBAC of the Tavant Software, Tavant shall recommend the configuration of hardware to run the system, both at the time of Acceptance and in the future in light of LBAC's growth objectives, at the required Transactions per second when using the Tavant Software ("Hardware Configuration").

6.2.    **Embedded Software.**  Tavant warrants that it has identified on Exhibit D all Embedded Software necessary to operate the Tavant Software, to enable Tavant to fulfill its obligations hereunder and for LBAC to fully enjoy the rights granted to LBAC herein.  LBAC acknowledges and agrees that, notwithstanding Tavant's delivery of any Embedded Software to LBAC hereunder, Tavant may not own rights allowing it to grant licenses to some or all of the Embedded Software. To the extent that Tavant does not own such rights and is not in a position to grant to LBAC rights with respect to any Embedded Software, Tavant shall, at Tavant's expense, obtain from each applicable licensor a license for LBAC to each item of Embedded Software for which a license is required to the full extent of the rights

Exhibit ___A___
Page __8__ of __45__

granted in and to the Tavant Software. Tavant shall also be solely responsible for any payment obligations related to the Embedded Software. The Embedded Software shall support the Tavant Platform. LBAC may use the Embedded Software to modify or enhance the Tavant Software consistent with the provisions of Section 3.1. Tavant shall provide written notice to LBAC regarding the transition from the use of evaluation copies of the Embedded Software to copies of the fully operable, production version of the same prior to such productive use. LBAC agrees not to use third party software such as Peoplesoft on the Embedded BEA application server software (described in Exhibit D).

6.3.    **Procurement.** LBAC shall be responsible for procurement of the entire Hardware Configuration from a vendor of LBAC's choosing. As LBAC grows and expands its businesses in scale or scope, LBAC shall be responsible for procurement of any additions to the Embedded Software and Hardware Configuration. Tavant shall recommend configuration requirements and assist LBAC in planning, installation, and certification as a result of increased business growth during the term of this Agreement, and thereafter so long as there is then in force and effect an SSM Services agreement, subject to Tavant's then current fees and availability.

6.4     **LBAC Development and Certification and Production Platforms.** Tavant shall assist LBAC with the configuration and installation of the LBAC development, certification and production platforms. All components of the Tavant Software and the Embedded Software shall be subject to testing and certification by LBAC as described in Section 6.5. Tavant shall provide LBAC, at Tavant's expense, copies of all components of the development and certification platforms. The production platform will be configured by LBAC in accordance with Tavant's specifications.

6.5     **Delivery and Acceptance.** LBAC and Tavant are currently engaged in the first phase of quality and user testing ("Phase One Testing") of the functional components of the Tavant System. At such time as LBAC and Tavant jointly determine that based on the results of Phase One Testing it appears that all components of the Tavant System meet all specifications and are otherwise free from defects in material, coding and other workmanship and that LBAC has made available for migration and import all of the necessary data for operation of the Tavant System, LBAC and Tavant shall commence the second phase of quality and user testing ("Parallel Testing"). Parallel Testing shall consist of running the Tavant System on LBAC's entire contract portfolio in parallel with LBAC's current servicing system, simulating the activity of the production environment to the extent necessary for validation of the financial and operating results produced by the Tavant System as compared to the financial and operating results produced by LBAC's current servicing system. The financial and operating results to be validated ("Acceptance Validating Criteria") are set forth on Exhibit F. LBAC shall make available to Tavant the same data sources and reports from LBAC's current servicing system that LBAC will use to validate the Acceptance Validating Criteria produced by the Tavant System

Exhibit ___A___
Page ___9___ of ___45___

during Parallel Testing, so that Tavant may independently validate the performance of the Tavant System during Parallel Testing. At such time as LBAC and Tavant jointly determine that for two consecutive monthly cycles during such Parallel Testing all Acceptance Validating Criteria are validated, LBAC shall so advise Tavant in writing, and at that time Parallel Testing shall terminate and Acceptance shall occur. If Acceptance has not occurred by a date which is five (5) months following the date of the commencement of Parallel Testing, LBAC may at any time thereafter terminate this Agreement with no obligation to make any further payments. Under no circumstances shall the Tavant System be deemed to be accepted, and LBAC shall be under no obligation to accept the Tavant System, unless and until Acceptance occurs in accordance with the provisions of this Section 6.5.

7.    **Restrictions on the Use of Confidential Information**

Each Party, as Recipient, agrees that during the term of this Agreement and for five (5) years thereafter, it will use the Discloser's Confidential Information only as necessary to fulfill its obligations herein or to exercise its rights or remedies hereunder. Recipient agrees to protect from disclosure such Confidential Information with the same degree of care that it affords its own confidential information, but in no event with less than reasonable care except that disclosure is permissible to third party agents, subcontractors, or representatives of the Recipient to the extent such third parties have a need to know for purposes of this Agreement and are bound by confidentiality obligations at least as restrictive as those herein. Whenever Tavant employs the services of third-party service providers to assist it in performing its obligations under this Agreement, Tavant will contractually obligate such service providers to maintain appropriate safeguards for the disposal of customer information. Each Party shall instruct its personnel to regard all Confidential Information disclosed to such party from the other party as Confidential Information which is proprietary and confidential and subject to the requirements of this Agreement. In addition to the obligations set forth in this Section 7 applicable to Confidential Information generally, to the extent that Tavant receives from LBAC non-public personal information ("Non-Public Personal Information") covered by the requirements of the Federal Financial Privacy Law, 15 U.S.C. §§ 6801-6809, and applicable regulations, or by the requirements of the Federal Fair Credit Reporting Act as amended by the Fair and Accurate Transactions Act of 2003, 15 U.S.C. section 1681w, and applicable regulations, or the requirements of any other applicable federal and state laws and related federal and state regulations, all as now in effect or hereafter imposed, passed or promulgated (all such laws and regulations collectively, the "Privacy Acts and Regulations"), Tavant shall disclose or use Non-Public Personal Information only as permitted by the Privacy Acts and Regulations.

Each party warrants and represents that it has, and covenants that it shall maintain, physical, electronic, and procedural controls and safeguards in a manner that complies with the Privacy Acts and Regulations to protect and maintain the security of Non-Public Personal Information. In addition to the other requirements of this Section 7, Recipient shall maintain the confidentiality of all Confidential Information including Non-Public Personal Information. Recipient will implement and maintain appropriate measures designed to meet the following objectives: (i) to ensure the security and confidentiality of Discloser's Confidential Information; (ii) to protect against any anticipated threats or hazards to the security or integrity of Discloser's

Exhibit ___A___
Page _10_ of _45_

Confidential Information; and (iii) to protect against unauthorized access to or use of Discloser's Confidential Information. Such measures will include, but not be limited to, the maintenance of appropriate safeguards to restrict access to the Discloser's Confidential Information to those employees, agents or service providers of Recipient who need such information to carry out the services provided by Recipient to Discloser hereunder. Discloser will make reasonable efforts to avoid disclosing to Recipient unencrypted non-public personal information related to Discloser's consumers.

Tavant will permit LBAC or its designees (subject to the confidentiality provisions of this Agreement) to audit Tavant's compliance with any and all confidentiality provisions contained in this Agreement and the Privacy Acts and Regulations. So long as Tavant is not in default under this Agreement, (i) such audits will be limited to not more than once annually and require LBAC to provide Tavant with thirty (30) days' written notice, (ii) if LBAC wishes to perform such audits at a greater frequency than once annually, LBAC shall provide Tavant with a written request sixty (60) days prior to any such additional audit, and the granting of permission to perform such additional audits shall be at the sole discretion of Tavant, and (iii) LBAC will reimburse Tavant for expenses incurred by Tavant in connection with such audits. If Tavant materially breaches this Section 7 of the Agreement, upon written request by LBAC, Tavant shall permit an audit conducted by LBAC at Tavant's expense, within 10 business days following LBAC's written request.

Upon the expiration or termination of this Agreement or upon the Discloser's request, each Recipient shall return to the Discloser any and all Confidential Information. If LBAC permits Tavant to dispose of or otherwise destroy LBAC Confidential Information rather than return it, Tavant shall do so in a manner that complies with the Privacy Acts and Regulations, and Tavant warrants, represents and covenants to LBAC that it has and will maintain sufficient systems and procedures in place to do so.

Each of the parties acknowledges that any use or disclosure of Confidential Information in violation of this Agreement may cause irreparable injury to the disclosing party for which other remedies at law would be inadequate, and each of the parties agrees that a disclosing party shall have the right to obtain a temporary restraining order and preliminary and permanent injunctive relief to enjoin any breach or threatened breach of this Section 7 without proof of any actual damages that may be or may have been caused to it by such breach, and may also exercise such other rights and remedies as the disclosing party may have at law or in equity.

*This Section 7 shall survive expiration or termination of the Agreement.*

8.     **Liability**

EXCEPT AS PROVIDED IN THIS SECTION 8, (i) IN NO EVENT SHALL EITHER PARTY'S AGGREGATE LIABILITY IN CONNECTION WITH THIS AGREEMENT EXCEED THE TOTAL COMPENSATION PAID OR PAYABLE TO TAVANT UNDER THIS AGREEMENT; and (ii) IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY LOSS OF USE, INTERRUPTION OF BUSINESS, LOST PROFITS, LOST REVENUE, OR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR INDIRECT DAMAGES OF ANY KIND, REGARDLESS OF THE FORM OF ACTION,

Exhibit ___A___

Page __11__ of _45_

WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES IN ADVANCE. THE LIMITATIONS ON LIABILITY AND DAMAGES CONTAINED IN THIS SECTION 8 SHALL NOT APPLY TO ANY CLAIM ARISING UNDER SECTION 9 AND SHALL NOT APPLY TO A BREACH OF ANY PROVISION OF SECTION 7 IF THE BREACH IS THE RESULT OF THE BREACHING PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

*This Section 8 shall survive expiration or termination of the Agreement.*

9.    **Indemnification**

9.1.    **Tavant Intellectual Property Indemnity.** (a) Subject to the provisions of this Section 9.1 and subject to the provisions of Sections 9.2, 9.3 and 9.4, Tavant, at its expense, shall defend, indemnify and hold LBAC, its directors, officers, employees and agents, harmless against (x) any claim, suit or proceeding brought against LBAC alleging that the (i) Tavant Software, (ii) Tavant Source excluding all source code and documentation for the Embedded Software, or (iii) Documentation excluding all Documentation for the Embedded Software (collectively, the "Indemnified Software"), as provided by Tavant to LBAC under this Agreement and used within the scope of this Agreement, is subject to any lien, claim, encumbrance or other restriction, or violates any legal or equitable duties owed to any of Tavant's current or previous customers or other businesses or consulting relationships, including without limitation duties relating to confidential information or competitive activities, infringes any United States patent issued as of the Effective Date or any United States or foreign trademark, copyright, mask work, trade secret, right of publicity, privacy or defamation, or misappropriates any trade secret, or (y) any claim, suit or proceeding brought against LBAC arising out of Tavant's modification of any Embedded Software or alleging a breach by Tavant of any license relating to any Embedded Software (each an "IP Claim"). Such indemnification obligation will require that LBAC (i) give Tavant prompt written notice of any such IP Claim; (ii) allow Tavant, with counsel reasonably acceptable to LBAC, to control the defense and settlement of such IP Claim, provided that Tavant shall not, without LBAC's written consent, effect the settlement or compromise of, or consent to the entry of any judgment with respect to, any IP Claim unless such settlement, compromise or judgment (a) includes an unconditional release of LBAC from all liability arising out of such action or IP Claim and (b) does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of LBAC in connection therewith; and (iii) provide Tavant with all information and assistance (at Tavant's expense) for defense and settlement of such IP Claim. Tavant shall pay any settlement, costs, and damages (including reasonable attorneys' fees) awarded after final appeal, but shall not be responsible for any settlement or compromise made without its consent.

(b) Should the Indemnified Software, or any part thereof, become or be likely to become the subject of any IP Claim, in addition to indemnifying LBAC in

Exhibit____A____

Page__12__of__45__

accordance with this Section 9.1, Tavant shall at its option, without additional cost to LBAC, (a) procure for LBAC the right to continue using the Indemnified Software without liability of any kind; (b) modify the Indemnified Software so it is not infringing without loss of functionality or increased costs of use, operation or maintenance; or (c) replace the Indemnified Software with non-infringing substitutes without loss of functionality or increased costs of use, operation or maintenance. If Tavant is unable to accomplish any of the foregoing despite Tavant's exercise of its commercially reasonable efforts, then Tavant may terminate LBAC's rights and Tavant's obligations hereunder with respect to the applicable Indemnified Software and refund to LBAC the unamortized portion of the license fees paid for such Indemnified Software, based upon a straight-line five (5) year depreciation commencing as of the date of Acceptance by LBAC of such Indemnified Software.

(c) Notwithstanding the foregoing terms of this Section 9, Tavant shall have no obligation with respect to any IP Claim that is based upon (i) the use of any Indemnified Software in combination with any equipment, devices, or software not delivered, authorized, or supported by Tavant, if the IP Claim would not have occurred but for such combination, operation or use; (ii) the use of other than the most current release or production version of the Indemnified Software, if the IP Claim would been prevented by the use of the most current release or version; (iii) modifications to the Indemnified Software made by a party other than Tavant, if such the IP Claim would not have occurred but for such modifications; or (iv) LBAC's use of the Indemnified Software other than in accordance with this Agreement. The foregoing (i) through (iv) are referred to collectively as "Indemnity Exclusions."

9.2.   **LBAC Indemnity.** LBAC will indemnify, defend (at its own expense) and hold Tavant, its directors, employees, officers and agents, harmless from any claim, suit or proceeding arising out of (i) any representations or warranties made by LBAC to an End User which are not reasonably based on Tavant's representations and warranties in this Agreement (unless Tavant provides advance written consent) ; (ii) a claim that any LBAC developed or provided content on the LBAC Site infringes upon the rights of a third party; or (iii) an Indemnity Exclusion (the foregoing (i) to (iii) are each an "LBAC-triggered Claim"). Such indemnification obligation will require that Tavant (i) give LBAC prompt written notice of any such claim; (ii) allow LBAC, with counsel reasonably acceptable to Tavant, to control the defense and settlement of such claim, provided that LBAC shall not, without Tavant's written consent, effect the settlement or compromise of, or consent to the entry of any judgment with respect to, any LBAC-triggered Claim unless such settlement, compromise or judgment (a) includes an unconditional release of Tavant from all liability arising out of such LBAC-triggered Claim and (b) does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of Tavant in connection therewith; and (iii) provide LBAC with all information and assistance (at LBAC's expense) for defense and settlement of such LBAC-triggered Claim. LBAC shall pay any settlement, costs, and damages (including reasonable attorneys' fees)

Exhibit ___A___

Page _13_ of _45_

awarded after final appeal, but shall not be responsible for any settlement or compromise made without its consent.

9.3.    **Indemnity Cap.** Notwithstanding anything to the contrary in this Agreement or otherwise, Tavant's and LBAC's obligations to indemnify, defend and hold harmless under this Section 9 shall be limited to and shall not exceed in the aggregate three million dollars ($3,000,000).

9.4    **Right to Hire Counsel.** Notwithstanding the foregoing, (i) any indemnitee under Section 9.1 or 9.2 shall be entitled to employ counsel at its own expense to participate the handling of the claim, and (ii) the indemnitor shall pay the fees and expenses associated with such counsel as they accrue if, in the reasonable judgment of the indemnitee, based on an opinion of counsel, there is a conflict of interest with respect to such claim which is not otherwise resolved or if the indemnitor has requested the assistance of the indemnitee in the defense of the claim or the indemnitor has failed to defend the claim diligently.

*This Section 9 shall survive expiration or termination of the Agreement.*

10.    **Warranty**

Tavant warrants to LBAC for a period of one-hundred-eighty (180) days from Acceptance of the Tavant Software (the "Warranty Period") that the Tavant Software and the Embedded Software, if operated as directed on the Tavant Platform specified in Exhibit E or other Tavant-approved, platform, will in all material respects conform to the Acceptance Validating Criteria. In addition, Tavant warrants that during the Warranty Period the Tavant Software, the Embedded Software and the Tavant Source will be substantially free of database or system locks or freezes that prevent the processing and retrieval of information. In addition, Tavant warrants that the Tavant Software, the Embedded Software and the Tavant Source are, and during the Warranty Period shall remain, free of "viruses," "time bombs," "Trojan horses," or other similar computer software routines designed to damage or destroy software or data. Tavant also warrants that the Tavant System is, as delivered to LBAC, free of any "back door" entry points that would allow access into the system without going through normal built-in security checks and logs. LBAC must report warranty claims to Tavant within the Warranty Period, and any nonconformity must be reproducible by Tavant. TAVANT DOES NOT WARRANT THAT LBAC'S USE OF THE TAVANT SOFTWARE OR THE EMBEDDED SOFTWARE WILL BE UNINTERRUPTED OR THAT THE OPERATION OF SUCH TAVANT SOFTWARE OR EMBEDDED SOFTWARE WILL BE ERROR-FREE. LBAC's sole remedy for any breach of the above warranties shall be (a) for Tavant to repair or replace the related Tavant Software, Embedded Software, Tavant Source or component at no additional cost to LBAC; or (b) for Tavant to provide LBAC with a reasonable workaround at no additional cost to LBAC so that the Tavant Software, the Embedded Software and the Tavant Source comply with the warranties in this section; or, if neither (a) nor (b) is possible, (c) for LBAC to withhold remaining payments. Any Tavant Software, Embedded Software or Tavant Source that is repaired, corrected, or replaced by Tavant shall be covered by this limited warranty for the

doc3137.doc

14

remainder of the Warranty Period. During the Warranty Period and at no cost to LBAC Tavant shall make each new release of the Tavant Software, Tavant Software Configuration, Tavant Source and Embedded Software available to LBAC with appropriate Documentation at to the time such release is made available to any other party. Each new release shall be covered by this limited warranty for the remainder of the Warranty Period. Except as identified in Exhibit D, Tavant warrants that the Software does not contain open source software and was not in whole or in part derived from open source software. Tavant warrants that Tavant has complied and will comply with all licenses, including open source licenses, in developing and/or modifying the Tavant System.

EXCEPT AS STATED IN THIS SECTION, TAVANT AND ITS LICENSORS MAKE NO OTHER EXPRESS, IMPLIED OR STATUTORY WARRANTY AND EXPRESSLY DISCLAIM ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The above warranties do not cover any problems or errors that arise from LBAC's use of the Tavant Software or the Embedded Software in combination with any software or hardware other than such hardware and software used under Tavant's direction or approval or described in Exhibits A, D and E.

Any warranties by LBAC to an End User that exceed those made herein are the sole responsibility of the LBAC.

*The warranties and disclaimers in this Section 10 shall survive expiration or termination of this Agreement.*

**11.    Support**

At LBAC's option Tavant shall provide maintenance and support (as described in an Exhibit C as such exhibit may exist from time to time) for all or a portion, as LBAC shall elect, of the Tavant Software and the Embedded Software. If LBAC elects to receive maintenance and support, Tavant shall provide such maintenance and support to LBAC and its wholly owned subsidiaries. Tavant shall not be under any obligation to provide maintenance to LBAC's other Affiliates.

**12.    Contract Renewal; Termination**

**Term; Termination**

12.1    **Term.** This Agreement shall commence on the date hereof and shall continue until terminated as provided in, and subject to, the terms of this Agreement. The parties acknowledge that the term for individual services to be provided by Tavant to LBAC may terminate earlier in accordance with the terms of applicable Exhibits to this Agreement.

12.2    **Termination at Will.** Subject to the payment by LBAC to Tavant of all amounts theretofore payable by LBAC to Tavant in response to invoices sent pursuant to Exhibit B, LBAC may, in its sole discretion, terminate this Agreement at any time upon thirty (30) days' prior written notice to Tavant.

Exhibit____A____

Page__15__of__45__

●                              ●

**12.3.    Termination for Cause.** Either Party may terminate this Agreement upon thirty (30) days' written notice to the other Party as a result of such other Party's material breach of this Agreement, provided that such breach has not been cured within such thirty (30) day period.

**12.4.    Effect of Termination.** Any termination or expiration of this Agreement shall not affect (a) any undisputed amounts owed by LBAC to Tavant in response to invoices sent pursuant to Exhibit B for services performed or deliverables delivered or in process prior to the effective date of the termination or expiration, or (b) any provision hereof expressly stated to survive such expiration or termination. Upon termination by LBAC for Tavant's breach of this Agreement, any monthly Software Maintenance Service Fee will also be terminated.

*This Section 12 shall survive expiration or termination of this Agreement.*

**13.    Governing Law**

This Agreement shall be governed and interpreted by the laws of the State of California, as if entered into between two California residents and wholly performed in California. The United Nations Convention on contracts for the International Sales of Goods is specifically excluded from application to this Agreement.

*This Section 13 shall survive expiration or termination of the Agreement.*

**14.    Miscellaneous Provisions**

**14.1.    Marketing.** Any use of LBAC's trademarks or logos, or quotes from LBAC's executives must be approved by LBAC in advance, and Tavant shall provide graphics and documentation illustrating the proposed use of the same at least thirty (30) days prior to any proposed use. Tavant shall not use any of LBAC's trademarks or logos or quotations until such time as it has received written approval of the graphics and documentation submitted to LBAC and all such uses shall only be in such form as provided in the approved graphics and documentation.

**14.2.    Changes to the Agreement.** For any change to the Agreement to be valid, both Parties must agree to such change in writing. Unless the Parties otherwise agree in writing, changes are not retroactive.

**14.3.    Force Majeure.** Neither Party shall be deemed in default of this Agreement if prevented from meeting a deadline or complying with any obligation due to an act of nature, riots, public disturbances, strike or similar labor action, fire, flood, earthquake, war or other military or civil disturbance, embargo, compliance with any law, decree, regulation, order or act of governmental body, agency or authority, or similar cause not within the reasonable control of the Party whose performance is interfered with and which, by the exercise of reasonable diligence, such Party is unable to prevent. All reasonably available means must be

Exhibit __A__
Page __16__ of __45__

employed by the affected Party to restore performance following a force majeure event.

14.4.    **Days.**  Unless otherwise stated, whenever the term days is used herein, it refers to calendar days.

14.5.    **Notices.**  All notices, requests, demands, instructions or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given upon delivery to the applicable Party's address specified on the Profile.  Either Party may change the address to which such communications are to be directed by giving written notice to the other Party.

14.6.    **Severability.**  If any portion of this Agreement is determined to be or becomes unenforceable or illegal, such portion shall be deemed eliminated and the remainder of this Agreement shall remain in effect.

14.7.    **Waiver.**  The failure by either Party to insist on performance of this Agreement or to exercise a right when entitled does not prevent either Party from doing so at a later time, either in relation to that default or any subsequent one.

14.8.    **Entire Agreement.**  This Agreement is the complete agreement between the Parties regarding the subject matter hereof, and it supersedes and replaces any prior oral or written agreement, understanding, or communications between Parties, unless expressly specified otherwise.

*All of the provisions of section 14 shall survive termination or expiration of this Agreement.*

Exhibit ___A___
Page __17_ of _45_

## EXHIBIT A

### TAVANT SOFTWARE

ALLSTARS – a receivables collection and servicing system

Except as the term "Tavant Software" is used in Section 1.16 for purposes of the definition of Tavant Source, Tavant Software shall also include for all other purposes:

ACM

CLS (Central Logging System)

Exhibit     A
Page  18  of  45

# EXHIBIT B

## PRICING EXHIBIT

1.    **LICENSE FEES:**

Total License Price: $3,000,000, payable as follows:

1.    $ 463,161.76 already paid;

2.    $ 1,274,726.61 already paid;

3.    $ 600,000 payable on Acceptance; and

4.    subject to LBAC's right to withhold payment in accordance with Section 10, $662,111.63 payable on the later to occur of (a) the expiration of the Warranty Period and (b) the completion of all warranty work.

2.    **MONTHLY SOFTWARE MAINTENANCE SERVICE FEES:**

From and after the date of Acceptance and for each month of the Warranty Period, LBAC shall pay to Tavant a monthly fee (the "Warranty Period Fee") for SSM Services provided during the Warranty Period. The monthly Warranty Period Fee shall be paid in arrears on the 15th day of the calendar month following the month (or partial month) in which the SSM Services are performed. The monthly Warranty Period Fee shall be for time and materials in accordance with Schedule 1 to this Exhibit B (setting forth applicable billing rates), but in no event shall any monthly Warranty Period Fee exceed $40,000 and in no event shall any Warranty Period Fee for any partial calendar month at the beginning of the Warranty Period or at the end of the Warranty Period exceed $40,000 prorated by the number of days of such calendar month. The Warranty Period Fee shall not include any fees for services that Tavant is required to perform under Paragraph 10 of the Agreement and Tavant shall not bill LBAC for those services.   From and after the conclusion of the Warranty Period, and for each month thereafter for a period of six months (the "Six Month Post-Warranty Period"), LBAC shall pay to Tavant a monthly fee (the "Post-Warranty Period Fee") for SSM Services provided during the Six Month Post-Warranty Period. The monthly Post-Warranty Period Fee shall be paid in arrears on the 15th day of the calendar month following the month (or partial month) in which the SSM Services are performed. The monthly Post-Warranty Period Fee shall be for time and materials in accordance with Schedule 1 to this Exhibit B, but in no event shall any monthly Post-Warranty Period Fee exceed $20,000 and in no event shall any Post-Warranty Period Fee for any partial calendar month at the beginning of the Six Month Post-Warranty Period or at the end of the Six Month Post-Warranty Period exceed $20,000  prorated by the number of days of such calendar month.

Exhibit    A

Page   19   of   45

**SCHEDULE 1 TO EXHIBIT B**

**BILLING RATES**

| Tavant Technologies | | | |
|---|---|---|---|
| Billing Rates Currently Charged w.e.f 01-10-2005 2005 - rates | | | |
| | | | |
| Director-Project management | | 65 | 90.00 |
| Project Manager | 120 | 60 | 85.00 |
| Technical Architect | 120 | 50 | 75.00 |
| Technical Lead | 100 | 36 | 61.00 |
| Senior Quality Assurance Engineer | 90 | 28 | 53.00 |
| Quality Assurance Engineer | 65 | 22 | 47.00 |
| Senior Software Engineer | 90 | 30 | 55.00 |
| Software Engineer | 75 | 24 | 49.00 |
| Senior Web Developer | 90 | 30 | 55.00 |
| Database Administrator | 75 | 24 | 49.00 |
| Quality Assurance Lead | | 34 | 59.00 |
| Senior Technical Lead (Associate Tech Architect) | 100 | 45 | 70.00 |
| Associate Business Architect | | 45 | 70.00 |

doc3137.doc

20

Exhibit  A

Page  20  of  45

●                              ●

## EXHIBIT C

## STANDARD SOFTWARE MAINTENANCE SERVICE
## TERMS AND CONDITIONS

This maintenance agreement (the "Maintenance Agreement") sets forth the SSM Services (collectively in this Exhibit C, "Maintenance") that Tavant will provide for the Tavant Software being licensed to LBAC, if LBAC so elects. For all purposes of this Maintenance Agreement including Tavant's obligations to perform the SSM Services hereunder, the Tavant Software includes all Embedded Software. All terms not otherwise defined herein have the meanings given them in the Technology Agreement dated as of August 15, 2006 (the "Agreement") between Tavant and LBAC.

1.     **Definitions**

    1.1.*"Maintenance"* means the technical support and other services described in Section 3 of this Maintenance Agreement.

    1.2.*"Prior Version"* means that release of the Tavant Software that is one version (major or minor) removed from the current version.  Examples:  if v6.3 replaced v6.2, then v6.2 is the Prior Version; if v6.0 replaced v5.0, then v5.0 is the Prior Version.  Prior Versions do not include Maintenance Releases.

    1.3.*"Problem"* means a demonstrable instance of incorrect operation of the Tavant Software that impacts LBAC's ability to use a functionality of the Tavant System, as documented in applicable Documentation.

    1.4.*"Problem Resolution"* when used in the context of resolving a reported Problem, means the following:

        1.4.1    the reported Problem is caused by faulty distribution media and is corrected by replacing the malfunctioning media; or

        1.4.2    a solution has been generated in the form of a tested "patch" or a compatible release of the Tavant Software that corrects the Problem without causing additional problems; or

        1.4.3    the origin of the Problem lies, as mutually agreed by Tavant and LBAC, with the Documentation and the appropriate Documentation will be clarified; or

        1.4.4    Tavant demonstrates that the problem is caused by third party software or hardware and acts to resolve problems with the Embedded Software vendors; or

Exhibit___A_____
Page__21__ of _45___

1.4.5   LBAC and Tavant jointly concur that further effort is not warranted.

1.5.*"Version"* means that release identification scheme generally in the form of X.Y, where X represents a major release or base level, and Y represents a minor release level: A version can have several maintenance releases identified by a third digit such as Z in X.YZ (a "Maintenance Release").

2.     **Term and termination**

2.1.**Term.**  These Maintenance terms and conditions are in effect until the earlier of (i) the termination of this Maintenance Agreement, or (ii) the termination of the Agreement. The initial Maintenance term is twelve (12) months following the date of expiration of the Warranty Period. LBAC shall be entitled to purchase Maintenance under the terms of this Maintenance Agreement for additional annual Maintenance terms prior to the expiration of the initial term and of each term thereafter.

2.2.**Termination For Convenience by LBAC**.  Subject to the payment by LBAC to Tavant of all amounts theretofore payable by LBAC to Tavant under this Maintenance Agreement, LBAC may, in its sole discretion, terminate Maintenance at any time upon thirty (30) days' prior written notice to Tavant

2.3.**Termination for Retirement of a Particular Version**.  In the event that Tavant elects to retire the Version of the Tavant Software for which LBAC has requested Maintenance, and LBAC does not choose to use and to accept Maintenance for a subsequent Version of the Tavant Software for which Tavant still provides Maintenance, then Tavant may terminate Maintenance upon ninety (90) days prior written notice, provided that Tavant shall, upon LBAC's written request, maintain the LBAC then current version for six (6) months.

2.4.**Adjustment to Rates**.  Commencing at any time after the initial twelve (12) months after the Effective Date, Tavant may increase its standard rates for the services set forth in this Maintenance Agreement, by giving LBAC sixty (60) days' prior written notice of such change, provided that increases shall not exceed 5% during any twelve (12) month period. Notwithstanding the foregoing, Tavant may not charge LBAC at a rate that exceeds the rate generally offered by Tavant to other customers for similar services.  The new maintenance fee rates will become effective after such sixty (60) day notice period.

2.5.**Termination for Nonpayment**.  Tavant may terminate Maintenance if any undisputed maintenance fees have not been paid within sixty (60) days of the unpaid invoice, upon written notice by Certified Mail, return receipt requested, sent to LBAC within forty-five (45) days of the invoice date, unless terms are agreed to in writing between Tavant and LBAC.

3.     **Description of Maintenance**

3.1.**Tavant Obligations**

3.1.1   Upgrade

Exhibit ___A___

Page __22__ of __45__

Tavant shall make each new release of the Tavant Software, Tavant Software Configuration, and associated Tavant Source available to LBAC with appropriate Documentation at the time such release is made available to any other party. Each new release shall be subject to the provisions of this Maintenance Agreement.

### 3.1.2   Support

Tavant shall use commercially reasonable efforts to provide Problem Resolution to Problems submitted by LBAC to Tavant, or identified by Tavant or the Embedded Software vendors.

### 3.1.3   Response time

Tavant shall use commercially reasonable efforts to provide response to support requests according to their priority level, as agreed to by Tavant and LBAC, pursuant to the table below.

| Priority Level | | Tavant Response time | Status Updates |
|---|---|---|---|
| 1. | The Problem is known to be in the Tavant Software and is having a critical business impact upon LBAC and LBAC's work is stopped or so severely impacted that LBAC cannot reasonably continue to work. | fifteen (15) minutes; work commenced immediately | no less frequently than once hourly |
| 2. | LBAC's work is continuing (not stopped); however, there is serious impact on LBAC's productivity and/or service levels. | Within thirty (60) minutes; work commenced within two (2) hours | no less frequently than once every two (2) hours |
| 3. | LBAC work is continuing (not stopped), however, the problem results in information distortion, report discrepancies, or errors in application for end-user. | Within two (2) hour; work commenced within eight (8) hours | no less frequently than once every four (4) hours |

General usage questions, not of a production management level, will be responded to within two days and treated with a lower priority.

In the table above, "hours" and "days" are based on 24 hours, 365 days for Tavant Maintenance Services. LBAC will provide Tavant, on an annual basis and any subsequent revisions, a LBAC company holiday schedule.

### 3.1.4   Scope of Maintenance

These Maintenance terms and conditions apply to the current version of the Tavant Software and, if the current version has been released for less than twelve (12) months, to the most recent Prior Version that is not compilation compatible with the current version. In any case, Tavant shall support each Version of the Tavant Software for at least twelve (12) months after it has been released.

### 3.1.5   Exclusions

Maintenance does not cover resolution of Problems which result from (i) software or hardware not developed or provided to LBAC by Tavant; (ii) modifications of the Tavant Software by any individual or entity other than Tavant without Tavant's written approval (which shall not be

Exhibit _A_____

Page _23_ of _45_

unreasonably withheld, conditioned or delayed); or (iii) use of the Tavant Software by LBAC which is not in accordance with the Documentation.

Tavant will only support its products on Platforms for which all components are supported by their respective vendors, under standard conditions, at the date the support request is made by LBAC to Tavant. Tavant will only provide support on Platforms designated in the Documentation, or deemed compatible with the same, in Tavant's reasonable discretion.

Maintenance does not include on-site support on a normal basis, although if needed services shall be provided at LBAC's site, at LBAC's expense, nor does it cover the design, customization, writing, or re-writing of LBAC's software, except for any changes made to the same by Tavant in the course of providing services or the Tavant Software hereunder.

### 3.2. LBAC Obligations

#### 3.2.1    Installation

LBAC shall be responsible for the installation of each version of the Tavant Software within one hundred and eighty (180) days from the date Tavant makes it available to LBAC.

#### 3.2.2    Skills

LBAC must have sufficient knowledge of the Platform, programming language, and the Tavant Software to use the Tavant Software on the Platform. Tavant shall provide any documentation, technical specification and configuration information necessary or desirable to assist LBAC to obtain such knowledge. Tavant shall provide, at reasonable charges in accordance with Tavant's then current rate schedule, training and assistance to LBAC if this Maintenance Agreement expires and is not renewed.

#### 3.2.3    Third Party Software

If a Problem submitted to Tavant LBAC Support is identified as caused by a third party software that is not explicitly included in the Tavant Software, it is LBAC's responsibility to contact the third party support and obtain a resolution for the Problem, unless the third party is an interface that Tavant has contracted with or licensed software directly on behalf of LBAC.

#### 3.2.4    Support

Tavant LBAC Support can close a call without Problem Resolution if the call has gone unattended to by LBAC for five (5) or more business days. Tavant LBAC Support shall notify LBAC in advance that the call item will be closed. If the call item has been closed, LBAC must contact Tavant LBAC Support to re-open the item. Tavant shall provide LBAC or provide online access to LBAC Problem and service request list items. LBAC may request that specific information be maintained of LBAC items for reporting and information purposes.

LBAC warrants, represents, and covenants that it shall inform Tavant to the extent LBAC is aware of any confidential or proprietary information of a third party that is provided to Tavant for support purposes and in such case LBAC shall obtain such third party's prior written consent

Exhibit ___A___

Page _24_ of _45_

to disclose the same to Tavant. In all cases, LBAC must provide the following items for each support request: name and company, Tavant products used, Platform information and detailed Problem description.

### 3.3. Escalation

Tavant's then current escalation procedure will be followed if either LBAC or the Tavant LBAC Support team believes the situation requires additional attention to resolve the Problem. Either Party may initiate escalation procedures if the normal avenues for Problem Resolution have been exhausted. Tavant's current escalation procedures are as specified in Schedule 1 to this Maintenance Agreement.

### 4.    Fees, invoicing and payment

For each Maintenance period, undisputed maintenance fees shall be due and payable within thirty (30) days from LBAC's receipt of the invoice, or, if different, the terms of payment agreed on in writing between Tavant and LBAC as specified in Exhibit B to the Agreement. If not paid, undisputed maintenance fees shall accrue interest at the rate of 1.5% per month, or the highest rate permitted by law, whichever is less, after forty-five days (45) from LBAC's receipt of the invoice until paid.

### 5.    Changes

If LBAC desires to have Tavant make any change to the Tavant System that is not required to be made by Tavant under this Agreement (including Exhibits), then LBAC will submit to Tavant a written request detailing such changes ("Change Order"). Tavant shall evaluate the Change Order as promptly as reasonably possible and shall respond as soon as practical (but in any event not later than five (5) days after Tavant's receipt of the Change Order) with a writing detailing (a) the time required to perform the Change Order and the resulting impact, if any, on any delivery schedule and (b) a good faith estimate of the additional cost or reduction in cost caused by implementation of the Change Order, which shall be based on rates not to exceed Tavant's then current rates as set forth in Schedule 1 to Exhibit B to the Agreement. If LBAC elects to authorize the performance of the Change Order in accordance with the terms of the Change Order Response, then it shall so notify Tavant, and the Parties shall mutually execute a Change Order Agreement setting forth the terms and conditions of the Change Order Response and/or other terms and conditions as mutually agreed by the Parties.

Exhibit ___A_____

Page _25_ of _45_

**EXHIBIT D**

**LIST OF EMBEDDED SOFTWARE**

The following table lists all the software that is embedded within Tavant Software and all proposed licenses and how LBAC can access the source code to such software:

| Name | HYPERLINK | Open Source | Proposed Licence | Sourc Code Avail From Tavai |
|------|-----------|-------------|------------------|------------|
| **APACHE** | | | | |
| ANT | http://ant.apache.org | YES | Open Source License | NO |
| Axis | http://ws.apache.org/axis/ | YES | Open Source License | NO |
| Commons | http://jakarta.apache.org/commons/ | YES | Open Source License | NO |
| Ibatis | http://ibatis.apache.org/ | YES | Open Source License | NO |
| POI-HSSF | http://jakarta.apache.org/poi/hssf/index.html | YES | Open Source License | NO |
| Struts | http://struts.apache.org/ | YES | Open Source License | Yes |
| WSS4j | http://ws.apache.org/wss4j/ | YES | Open Source License | NO |
| log4j | http://logging.apache.org/log4j/docs/ | YES | Open Source License | NO |
| XMLBeans | http://xmlbeans.apache.org/ | YES | Open Source License | NO |
| **OPEN SYMPHONY** | | | | |
| OS Cache | http://www.opensymphony.com/oscache/ | YES | Open Source License | NO |
| Quartz | http://www.opensymphony.com/quartz/ | YES | Open Source License | NO |
| OGNL | http://www.opensymphony.com/ognl | YES | Open Source License | NO |
| **RED HAT** | | | | |
| Hibernate | http://www.hibernate.org/ | YES | Open Source License | NO |
| **OTHERS** | | | | |
| Castor | http://castor.codehaus.org/ | YES | Open Source License | NO |
| JXLS | http://jxls.sourceforge.net | YES | Open Source License | NO |

doc3137.doc

26

Exhibit ___A___
Page _2U_ of _45_

| MeadCo ActiveX control | http://www.meadroid.com/scriptx/index.asp | YES | Open Source License | NO |
| SPRING | http://www.springframework.org | YES | Open Source License | NO |
| LOG4PLSQL | http://log4plsql.sourceforge.net | YES | Open Source License | NO |
| Common Controls | http://www.common-controls.com/en/index.php | YES | Open Source License | Yes |
| ILOG JRules | http://www.ilog.com/products/jrules/ | NO | Sublicense from Tavant | NO |
| JDOM | http://www.jdom.org/ | YES | Open Source License | NO |
| EDE | www.tavant.com | NO | License from Tavant | Yes |

Exhibit _A_

Page _27_ of _45_

EXHIBIT E

SUPPORTED PLATFORM

# Optimal Deployment Recommendations

## All Stars

August 15, 2006

---

Exhibit _A_

Page _28_ of _45_

## Document control

| Version | Author | Date | Description |
|---------|--------|------|-------------|
| Draft | Ganesh Suryanarayana | 10/04/2005 | Initial document draft creation – all sections |
| Draft | Ganesh Suryanarayana | 10/06/2005 | Updated the hardware requirement specifications |
| Updated By | Sankar Bora | 12/03/2006 | Updated the hardware requirement specifications |
| Reviewed By | Vineet Saxeena | 13/03/2006 | |
| | | | |

## Table of Contents

DOCUMENT CONTROL ................................................................................. 2!

TABLE OF CONTENTS ................................................................................. 2!

EXECUTIVE SUMMARY .............................................................................. 3!

Exhibit ___A___

Page_ 29 _ of _ 45_

1   NON-FUNCTIONAL REQUIREMENTS ............................................................................... 3
    1.1   CURRENT PRODUCTION VOLUMES ............................................................................ 3
    1.2   ANTICIPATED PRODUCTION VOLUMES ....................................................................... 3
    1.3   ANTICIPATED RESPONSE TIME ................................................................................. 3
2   APPLICATION BASELINE ............................................................................................... 3
    2.1   TRANSACTIONS ..................................................................................................... 3
3   OBSERVATIONS: ............................................................................................................ 3

    •   RESPONSE TIME FOR SUSPENSE POSTING AND BANK POSTING MAY BE MORE THAN A
    SECOND IN THE CURRENT BUILD AND ALSO LOGIN IS TAKING A CONSIDERABLE AMOUNT OF
    TIME. ............................................................................................................................ 3

4   REFERENCES .................................................................................................................. 3
5   RECOMMENDED APPLICATION CONFIGURATION ....................................................... 3
    5.1   WEBLOGIC CONFIGURATION .................................................................................. 3
        5.1.1   Required patches ........................................................................................... 3
        5.1.2   Required runtime arguments ......................................................................... 3
    5.2   JAVA VIRTUAL MACHINE ...................................................................................... 3
    5.3   FOREIGN JMS SETTINGS ....................................................................................... 3
6   ASSUMPTIONS ................................................................................................................ 3
7   RECOMMENDED PHYSICAL DEPLOYMENT .................................................................. 3

HARDWARE REQUIREMENTS .............................................................................................. 3
    7.1   ALL-STARS DOMAIN .............................................................................................. 3
    7.2   SOFTWARE LICENSING REQUIREMENTS .................................................................. 3
    7.3   NETWORK REQUIREMENTS .................................................................................... 3
        7.3.1   Loan Balancers .............................................................................................. 3
    7.4   NETWORK DIAGRAM <AS OF NOW> ........................................................................ 3

## Executive Summary

The purpose of this document is to propose the optimal deployment configuration and deployment architecture of the 'All Stars' software complex. The first iteration of this document addresses the recommendations for the LBAC project based on the provided transaction volumes. In the efforts to achieve the best deployment configuration, the following data points

and assumptions were leveraged:

1. The current and anticipated transaction volumes detailed in the Performance Team's projected.
2. The adoption of HP DL380 on Windows 2003 as the server platform of choice
3. The standardization of BEA Web Logic 8.1.3 as the J2EE application server
4. The capacity planning currently projected is estimated based on the overall system usage, number of users, the expected response time and past experience.
5. Performance testing conducted in India on R3_7_2_1 build.
6. Hardware and Software for failover and daily back up is not considered in the capacity plan. Strategy for failover and daily back up will be entirely depend on company policy of LBAC.

The format of the document highlights the anticipated production volumes, reviews the overall system parameters, usage and recommends application configurations and physical deployment. Based on the analysis to date, 'All Stars' will require a total of 13 servers.

The following will be the usage of the 13 servers:
- 1 application server will be used as Administration and Monitoring purposes.
- 9 managed servers, which are clustered and load balanced, will be used to serve user requests.
- 1 Database server
- 1 server to handle all FTP requests ( if Control M is used for FTP then details are not known to performance team yet)
- 1 server for failover to handle FTP requests ( if Control M is used for FTP then details are not known to performance team yet)

1    **Non-Functional Requirements**

## *Current production volumes*

| TOTAL LOAN RECORDS TO CONVERT | 250,000 |
|---|---|

Exhibit___A___
Page _31_ of _45_

| | |
|---|---|
| TOTAL OPEN ACTIVE LOANS TO CONVERT | 93,000 |
| TOTAL OPEN CHARGE OFF LOANS TO CONVERT | 35,000 |
| NEW ACCOUNTS ADDED PER MONTH | 3,500 |
| NEW REPOS PER MONTH | 300 |
| DEFERMENTS PER MONTH | 450 |
| DUE DATES PER MONTH | 500 |
| NEW TOTAL LOSSES PER MONTH | 100 |
| BANKRUPTS PER MONTH | 150 |
| IMPOUNDS PER MONTH | 25 |
| ASSIGNMENT FOR REPO PER MONTH | 450 |
| ASSIGNMENT FOR CHASE PER MONTH | 1,200 |
| MOVE REQUESTS PER MONTH | 120 |
| WAIVE PER MONTH | 200 |
| LOOK PER MONTH | 20 |
| BURN PER MONTH | 400 |
| SKIP TRACING PER MONTH | 100 |
| BDR REPAYMENT PER MONTH | 200 |
| SOLDIERS & SAILORS PER MONTH | 5 |
| BK CRAMDOWN PER MONTH | 15 |
| SETTLEMENT PER MONTH | 20 |
| SINGLE/MULTIPLE PER MONTH | 50 |
| LOANS PAYING OFF PER MONTH | 2,800 |
| ACTIVE REPOS IN PROCESS | 350 |
| ACTIVE TOTAL LOSSES IN PROCESS | 250 |
| ACTIVE BANKRUPTS IN PROCESS | 3,500 |

*Anticipated production volumes*

| | |
|---|---|
| TOTAL LOAN RECORDS TO CONVERT | 750,000 |
| TOTAL OPEN ACTIVE LOANS TO CONVERT | 279,000 |
| TOTAL OPEN CHARGE OFF LOANS TO CONVERT | 105,000 |
| NEW ACCOUNTS ADDED PER MONTH | 10,500 |
| NEW REPOS PER MONTH | 900 |
| DEFERMENTS PER MONTH | 1,350 |
| DUE DATES PER MONTH | 1,500 |
| NEW TOTAL LOSSES PER MONTH | 300 |
| BANKRUPTS PER MONTH | 450 |

Exhibit  A
Page 32 of 45

| IMPOUNDS PER MONTH | 75 |
|---|---|
| ASSIGNMENT FOR REPO PER MONTH | 1,350 |
| ASSIGNMENT FOR CHASE PER MONTH | 3,600 |
| MOVE REQUESTS PER MONTH | 360 |
| WAIVE PER MONTH | 600 |
| LOOK PER MONTH | 60 |
| BURN PER MONTH | 1,200 |
| SKIP TRACING PER MONTH | 300 |
| BDR REPAYMENT PER MONTH | 600 |
| SOLDIERS & SAILORS PER MONTH | 15 |
| BK CRAMDOWN PER MONTH | 45 |
| SETTLEMENT PER MONTH | 60 |
| SINGLE/MULTIPLE PER MONTH | 150 |
| LOANS PAYING OFF PER MONTH | 8,400 |
| ACTIVE REPOS IN PROCESS | 1,050 |
| ACTIVE TOTAL LOSSES IN PROCESS | 750 |
| ACTIVE BANKRUPTS IN PROCESS | 10,500 |

## *Anticipated response time*

| FUNCTIONALITY | RESPONSE TIME |
|---|---|
| Server side processing | < 1 sec |
| Refresh List | < 20 minutes |
| EOP Process | <5 hours |
| View Audit Logs | 10 sec |
| EDE – Generate Document | <45 sec |

**Application baseline**

Load testing on the LBAC_R3_7_2_1 build was carried out by grouping the use cases into 4 unique scenario's viz., ScenarioP1, ScenarioP2, ScenarioP3 and ScenarioP4. The detailed breakup on the use cases involved in the above mentioned scenarios are as mentioned

below:

1. ScenarioP1:          AccountSearch
                        RecordActivity By User SUC1
                        RecordActivity By User SUC2
                        LoanDetails

2. ScenarioP2:          RecordActivity By User SUC3
                        RecordActivity By User SUC4
                        SORTServiceRequestList
                        Suspense Processing

3. ScenarioP3:          ServiceRequestLogNextNPreviousSR
                        DefermentSR_EligibleCollect
                        DefermentSR_EligibleWaive
                        DueDateChange

4. ScenarioP4:          ServiceRequestLogNextNPreviousACCOUNT
                        DefermentSR_NonEligibleCollect
                        DefermentSR_NonEligibleWaive
                        BankPosting

The above mentioned scenarios have been load tested with 4, 8, 12, 16 and 20 VUsers
respectively.
Find below the details on the environment setup in which the above mentioned Load tests were
conducted.

**Application Server M/c:**

| | |
|---|---|
| Machine Name: | PERF1 and PERF2 (Production mode JVM Heap: Min=1GB, Max =1GB) |
| Processor: | 4 CPU Machine (x86Family 15 Model 4 Stepping 3 GenuineIntel ~3391 Mhz) |
| Total Physical Memory: | 4,095.08 MB (RAM) |
| OS Name: | Microsoft(R) Windows(R) Server 2003, Standard Edition |
| Version: | 5.2.3790 Service Pack 1 Build 3790 |

**Database configuration :**

| | |
|---|---|
| Instance name: | LBACLT01 |
| Database: | Oracle Database 10g Enterprise Edition Release 10.1.0.4.0 - Prod |
| PL/SQL Release: | 10.1.0.4.0 - Production |
| CORE: | 10.1.0.4.0 - Production |
| TNS for Linux: | Version 10.1.0.4.0 - Production |
| NLSRTL Version: | 10.1.0.4.0 - Production |
| Operating System: | Red Hat Enterprise Linux AS release 4 |

Exhibit_____A_____
Page __34__ of __45__

Server Memory:           2GB CPU – 1

**Database configuration for EOP:**
Instance name:          LBACPF02
Database :              Oracle Database 10g Enterprise Edition Release 10.1.0.4.0 - Prod
PL/SQL Release          10.1.0.4.0 - Production
CORE :                  10.1.0.4.0     Production
TNS for Linux:          10.1.0.4.0 - Production
NLSRTL Version:         10.1.0.4.0 - Production

Operating System:      Red Hat Enterprise Linux AS release 4
Server Memory:          4GB CPU - 1

## *Transactions*

The Important transactions pertaining to the above use cases, the data relevant to them and the associated graphs from the load test reports viz., TPS, Average Transaction Response time have been captured into the XL file **"LBACR3_7_2_1_ScenarioRunReport.xls"**. CVS Path: \\LBAC\Performance



Scenario Report

And "**LBAC_EOP_LOADTEST_RESULS.xls**", CVS Path: \\LBAC\Performance.



EOPtestResults

And "LBAC_R3_7_2_1_SLAvsAchieved.xls", CVS Path: \\LBAC\Performance.



SLAvsAchieved

Exhibit___A___
Page_35_ of _45_

doc3137.doc                    35

**Observations**

- Response time for Suspense posting and Bank posting may be more than a second in the current build and also login is taking a considerable amount of time.
- Refresh list is taking less than 15 minutes in the build R3_7_2_1.
- EOP test needs to be done on CERT to get the exact statistics. The tests we have done on EOP are not CPU bound .

**References**

Following are the other documents using which this plan has been prepared.

- "LBAC Load Test Plan.doc", CVS Path: \\LBAC\Performance.

**Recommended application configuration**

### WebLogic configuration

In an effort to improve transaction performance and stability, it has been recommended that 'All Stars' deploys with BEA WebLogic 8.1.3.

### Required patches

- Need to add , once we get updates on patches used on CERT and test environment .Please look at the doc "WebLogic_8.1.3_patches.doc", CVS Path: \\LBAC\Performance\WeblogicSp3Patches


Sp3Patches

### Required runtime arguments

Same as Java Virtual Machine configuration given below.

### Java Virtual Machine

BEA JRockit 81sp3_142_04 Java Virtual Machine (JVM) is recommended. The following JVM settings are recommended.

**Exhibit** A
**Page** 34 of 45

| JVM setting name | Recommended value |
|---|---|
| 1.  Min heap size | -Xms1024m |
| 2.  Max heap size | -Xmx1024m |
| 3.  Class GC | -noclassgc |
| 4.  Garbage collector | -Xgc:parallel |

## *Foreign JMS settings*

No usage of foreign JMS settings.

### Assumptions

Following are the assumptions that have been made while doing the recommendations:

1.  The build for 'All Stars' used for assessing the recommendation is R3_7_2_1 build and the capacity plan is subject to vary for the future builds and scope changes.
2.  The capacity plan is subject to vary after performance testing conducted on CERT.
3.  Hardening will be done on final build to production on CERT

### Recommended physical deployment

Based on performance and thorough cost benefit analysis, a total number of 10 HP DL380 (4-way) servers were projected to handle the anticipated 'All Stars' volume.

Exhibit___A___
Page_37_of_45

**Hardware requirements**

## *All-Stars Domain*

Based on the performance baselines, it is recommended that the server allocation for the 'All Stars' to be as follows:

| Server type | Quantity | Description |
|---|---|---|
| Standalone Application Servers 'All Stars' | 10 | ▪ Windows 2003 Operating System<br>▪ HP DL380 G3 (2CPU Dual Core Xeon Intel)<br>▪<br>▪ 2GB RAM per processor<br>▪ 3.66 GHz Processing speed<br>▪ 1MB L2 processor cache . |
| Database Server | 1 | ▪ Linux<br>▪ HP DL580 G3 (4 CPU Dual-Core Intel Xeon Processor)<br>▪<br>▪ 2GB RAM per processor<br>▪  Swap: 12 GB<br>▪ 3.66 GHz Processing speed<br>▪ 1MB L2 processor cache |
| FTP Server | 2 | If Control M is used for FTP then details are not known to performance team yet. |

## *Software licensing requirements*

| Software name | Quantity | Description |
|---|---|---|
| 1.  WebLogic Server Cluster Licenses | 40 | The number specified is the number of WebLogic CPU licenses. |
| 2.  Oracle 10g | 1 | |

## *Network requirements*

### Loan Balancers

The following are the load balancers which are required for each data center

| Name | Target servers | Description |
|---|---|---|

Exhibit ___A___

Page _38_ of _45_

| 1. All-Stars LB | All Stars Web Logic instances deployed. | This ensures proper load balancing of all HTTP requests.  Please enable sticky sessions |
|---|---|---|

### Network diagram <as of now>



Above diagram will have one more manage server called PROD 9 under Load balancer

Exhibit ___A___

Page _39_ of _45_

**EXHIBIT F**

**ACCEPTANCE VALIDATING CRITERIA**

## DAILY & MONTHLY LOAN BALANCES VALIDATION

## CASH TESTS

1. Sum of all monetary credit and debit transactions presented to the system (posted and suspensed)
   a. Sum of all monetary principal entries
   b. Sum of all monetary interest entries
   c. Sum of all monetary expense entries
   d. Sum of all monetary force-placed insurance entries
   e. Sum of all monetary fee entries
      i. Late charges
      ii. NSF fees
      iii. Deferment fees
      iv. Other fees

2. Sum of all monetary transactions flagged as recovery 1 (strategic reporting gross default) or recovery 2 (investor reporting liquidated receivables/liquidation proceeds)
   a. Sum of all monetary principal entries
   b. Sum of all monetary interest entries
   c. Sum of all monetary expense entries
   d. Sum of all monetary force-placed insurance entries
   e. Sum of all monetary fee entries
      i. Late charges
      ii. NSF fees
      iii. Deferment fees
      iv. Other fees

## NON CASH TESTS

1. Sum of all non-monetary credit and debit transactions presented to the system (posted and suspensed)
   a. Sum of all non-monetary expense entries
      i. Sum of all servicer advance entries (recoverable expense)
      ii. Sum of all operating expense entries (non-recoverable expense)
   b. Sum of all non-monetary force-placed insurance entries
   c. Sum of all non-monetary fee entries
      i. Late charges
      ii. NSF fees

doc3137.doc                            40

**Exhibit** A
**Page** 40 **of** 45

    iii.  Deferment fees
    iv.  Other fees

## ACCRUALS TEST

1. Sum of all interest accrual entries
    a.  Cumulative comparison of current day to previous day
    b.  Cumulative comparison of current month end to previous month end
        i.  By bank interest accrued
        ii.  By dealer interest accrued

## RECEIVABLES TESTS

1. Sum of unpaid principal balances
2. Sum of interest owing
    a.  By bank interest owing
    b.  By dealer interest owing
3. Sum of unpaid servicer advances (recoverable expenses)
4. Sum of unpaid force-placed insurance
5. Sum of unpaid fees
    a.  Late charges
    b.  NSF fees
    c.  Deferment fees
    d.  Other fees

## STRUCTURAL BALANCES TESTS

1. Sum of amount past due
2. Sum of amount next due
3. Sum of partial payment amounts

## CUMULATIVE CASH BALANCES TESTS

1. Sum of principal paid life to date
2. Sum of interest paid life to date
    a.  Sum of bank interest paid life to date
    b.  Sum of dealer interest paid life to date
3. Sum of payments collected life to date
4. Sum of expenses paid life to date
5. Sum of force-placed insurance paid life to date
6. Sum of fees paid life to date
    a.  Late charges
    b.  NSF fees
    c.  Deferment fees
    d.  Other fees

Exhibit _____A_____
Page _41_ of _45_

**COMPARATIVE TEMPORAL VALIDATIONS OF FINANCIAL BALANCES**

1. Current day compared to previous day
   a. Unpaid principal balances
   b. Unpaid interest balances

2. Current end of period compared to previous end of period (BOP to EOP)
   a. Unpaid principal balances
   b. Unpaid interest balances

**DAILY & MONTHLY LOAN STRUCTURAL VALIDATION TESTS**

1. Individual account positions
   a. Date next due
   b. Date past due
   c. Contractual days delinquent
   d. Modified days delinquent

2. Aggregate portfolio positions
   a. Aggregate gross delinquency by contractual delinquency
   b. Aggregate net delinquency by contractual delinquency
   c. Aggregate gross delinquency by modified delinquency
   d. Aggregate net delinquency by modified delinquency (portfolio standard)

**COMPARATIVE TEMPORAL VALIDATIONS OF UNITS & STRUCTURAL POSITIONS**

1. Current day compared to previous day
   a. Number of active loans
      i.  Number of delinquent loans
   b. Number of gross default loans
   c. Number of repopssessions
   d. Number of charged off loans

2. Current end of period compared to previous end of period (BOP to EOP)
   a. Number of active loans
      i.  Number of delinquent loans
   b. Number of gross default loans
   c. Number of repopssessions
   d. Number of charged off loans

**PORTFOLIO SEGMENT VALIDATION CATEGORIES**

1. By Active Portfolio
   a. By Region

Exhibit ___A___

Page _42_ of _45_

      b. By Pool
      c. By Vintage
      d. By Gross Defaulted Accounts
      e. By Liquidated Receivable Accounts

2. By Charged Off Portfolio
      a. By Region
      b. By Pool
      c. By Vintage
      d. By Gross Defaulted Accounts
      e. By Liquidated Receivable Accounts

**Exhibit** A

**Page** 43 **of** 45

## SCHEDULE 1 TO EXHIBIT C

### TAVANT'S CURRENT ESCALATION PROCEDURES

**1.    Initiating Escalation**

The escalation procedure (hereinafter referred to as "Escalation ") will be followed if either the LBAC or the Tavant LBAC Support team believes the situation requires additional attention to resolve the Problem or if the problem has not been resolved within the outlined Severity Response Targets as stated in Section 3.13 of this Maintenance Agreement. Either Party may initiate Escalation if the normal avenues for Problem Resolution have been exhausted. Conditions that will trigger Escalation include degree of severity and business impact, dissatisfaction of a Problem Resolution, or a failure to respond in a timely manner.

**2.    Escalation Process**

The LBAC will call the Tavant LBAC Support Team or the Tavant LBAC Support Manager to request Escalation. Once Escalation has been initiated, appropriate contacts are designated within each Party's organization. When the Problem is resolved, the Escalation is closed.

**3.    Designated Contacts**

Once Escalation has been requested, both Parties shall designate individuals with the responsibilities listed below. Once designated, the individuals shall maintain direct contact with each other until the escalation is closed as described below.

    **a.    Tavant LBAC Support Manager**
    The Tavant LBAC Support Manager ensures the Problem is defined, follows the Problem Resolution process with additional attention, and maintains regular contact with the LBAC Contact.

    **b.    Tavant Technical Support Manager**
    The Tavant Technical Support Manager:
- is responsible for managing the Escalation process within Tavant's Second and Third Level Support Organization as required;
- reviews the Problem, and ensures prompt response to escalated requests; and
- maintains regular follow-up with the LBAC Support Manager.

    **c.    LBAC Contact**
    The LBAC Contact ensures the Problem is defined, and guarantees the availability of LBAC's development team or appropriate technical contact in order to provide whatever technical information may be needed by the Tavant LBAC Support Team during the Problem Resolution process. LBAC will

Exhibit    A

Page  44  of  45

establish two (2) LBAC Contact Managers: Infrastructure LBAC Contact and Business Application LBAC Contact. Tavant will notify the appropriate LBAC Contact Manager. The LBAC Contact Manager has the responsibility for LBAC internal notifications. If the Escalation is associated with third party software or services, the Tavant LBAC Contact will provide the LBAC Contact Manager with information on the Escalation with the third party and provide status information to LBAC until the matter is resolved.

      d.    **Designated Severity Manager**

If at any time during Escalation, either Party feels the Problem is not being dealt with or the other Party is not responding adequately to requests for assistance, both Parties will be required to designate a Severity Manager. The Severity Mangers will work together to resolve the issue. However, nothing herein shall restrict a Party from taking other action, including legal action, after appointing a Severity Manager.

4.    **Status Updates**

Each designated contact will establish a schedule to provide regular status updates to his/her counterpart.

5.    **Closing Escalation**

When both Parties agree that the Problem has been resolved or the situation no longer requires Escalation, the Escalation is closed. Each designed contact will exchange final reports with his/her counterpart summarizing the Problem, actions taken, results of those actions, and when needed, recommended future actions.

Exhibit ___A___
Page_45_ of _45_



SAN JOSE | 80 North First Street
Los Angeles | San Jose, CA 95113
New York | Telephone (408) 287-6262
San Francisco | Facsimile (408) 918-4501
Redwood City | www.ropers.com

Michael J. Ioannou
(408) 947-4802

L  A  W  Y  E  R  S
IKMKB
ᴿᴼᴾᴱᴿˢ ᴹᴬᴶᴱ�Sᴷᴵ ᴷᴼᴴᴺ ᴮᴱᴺᵀᴸᴱᵞ

mioannou@ropers.com

April 24, 2007

**Via Federal Express Priority Overnight Delivery, Internet, and Facsimile**

J. Michael May                                        Mr. George S. Ginsberg
Executive Vice President, Chief Legal Officer        Executive Vice President
AmeriCredit Corporation                               Long Beach Acceptance Corporation
801 Cherry Street, Suite 3900                         One Mack Centre Drive
Fort Worth, TX 76102                                  Paramus, NJ 07652

Mr. David C. Kellogg                                  Mr. Stephen W. Prough
Vice President and CIO                                President
Long Beach Acceptance Corporation                     Long Beach Acceptance Corporation
One Mack Centre Drive                                 One Mack Centre Drive
Paramus, NJ 07652                                     Paramus, NJ 07652

Re:    <u>Tavant Technologies, Inc. ("Tavant") vs. Long Beach Acceptance Corporation
       ("LBAC") and Its Successor-in-Interest, AmeriCredit Corporation
       ("AmeriCredit")</u>

Gentlemen:

I represent Tavant. On or about August 15, 2006, Tavant and LBAC entered into a
technology agreement ("Agreement") whereby Tavant developed and licensed certain custom
software for LBAC for use in the consumer auto loan industry.

On or about January 25, 2007, George Ginsberg, Executive Vice President of LBAC,
provided a notice of termination to Tavant pursuant to Section 12.2 of the Agreement. As LBAC
knows, the Agreement to develop and license the Tavant Software, executed on August 15, 2006,
was initiated several months earlier, with Tavant performing substantial custom development
services for and at the direction of LBAC. The parties agreed that compensation for the custom-
developed software and license would be based on a total license/service price of $3 million
pursuant to the parties' estimate and actual required development work customized to LBAC's
needs. This agreement to pay a fixed price of $3 million was memorialized in the Agreement
and substantial communications between the parties.

Exhibit "B" to the Agreement confirms prior partial payment to Tavant, at the time of
execution of the Agreement, of a total of $1,737,888.30. The Agreement also provided <u>when</u>
remaining amounts of the "in process" deliverables would be paid, i.e., the $600,000 payment

SJ/391433 1/NB

**Exhibit** B
**Page** 1 **of** 4



J. Michael May, AmeriCredit Corporation
Mr. Stephen W. Prough, Mr. David C. Kellogg, Mr. George S. Ginsberg
Long Beach Acceptance Corporation
Re: Tavant Technologies, Inc. vs. LBAC and AmeriCredit Corp.
April 24, 2007                                                           Page 2

after Acceptance of the Tavant Software, and the $622,111.63 payment at the end of the
warranty period. Further, the future warranty work was capped at a certain monthly service fee
pursuant to paragraph 2 of the pricing exhibit that is in addition to the obligated payments for the
"in process" deliverables.

The parties specifically agreed to this deferred billing and payment arrangement for the
license/service fees for the customization and development of the Tavant Software for use by
LBAC.

Just prior to delivery of all deliverables and final Acceptance, LBAC terminated the
Agreement pursuant to the termination-at-will provision. Pursuant to Section 12.4, Effect of
Termination, LBAC and its successor-in-interest, AmeriCredit, were and are obligated to
immediately pay Tavant $1,222,111.63. Section 12.4 specifically provides that any deliverables
that are "in process prior to the effective date of the termination" must be paid. Please keep in
mind that the $600,000 due upon Acceptance covers due and owing amounts for completed work
since no further substantive work was required before Acceptance, other than minor bug-fixing.
Further, the additional payment that was deferred to be paid at the end of the warranty period in
the amount of $622,111.63, was for earned development work or deliverables "in process" and
has and continues to also be due at this time pursuant to Section 12.4.

Demand is hereby made for payment of $1,222,111.63, plus interest at the legal rate from
and after January 25, 2007. Please be advised that if payment is not received by the close of
business on Monday, April 30, 2007, we will proceed to initiate suit for full recovery against
LBAC and AmeriCredit, its successor-in-interest, to the obligations under the Agreement.

Sincerely,

ROPERS, MAJESKI, KOHN & BENTLEY

Michael J. Ioannou

MJI/nwb

Cc: Tavant Technologies, Inc.

SJ/391433.1/NB

Exhibit __B__
Page __2__ of __4__

SAN JOSE | 80 North First Street
Los Angeles | San Jose, CA 95113
New York | Telephone (408) 287-6262
San Francisco | Facsimile (408) 918-4501
Redwood City | www.ropers.com

**ŖMKB**

Michael J. Ioannou
(408) 947-4802

mioannou@ropers.com

July 10, 2007

**Via Facsimile and U.S. First-class Mail**

J. Michael May, Esq.
General Counsel
AmeriCredit Corporation
801 Cherry Street, Suite 3900
Fort Worth, TX 76102

Re: Tavant Technologies, Inc. vs. LBAC, et al.

Dear Mr. May:

This letter confirms receipt of your letter dated April 26, 2007, with regard to the above-referenced matter. Based on your statements concerning purported representations of the Seller of LBAC, Tavant investigated such thinly disguised threats against the owners of Tavant.

The express terms of the August 15, 2006, Technology Agreement, Section 12.4, Effect of Termination, confirm that LBAC, and its successor-in-interest, AmeriCredit, were and are obligated to pay to Tavant $1,222,111.63, plus interest at the legal rate of 10% per annum from and after January 25, 2007. The Technology Agreement and status of the project were disclosed to AmeriCredit and/or available for inspection during its due diligence on acquisition of LBAC. Further, no terms of the purchase agreement purported to represent LBAC's obligations to Tavant under the Technology Agreement.

A competent lawyer performing any reasonable due diligence would be able to ascertain that shortly after the acquisition of LBAC stock, the Tavant/LBAC project deliverables would be due and owing in two installments, one at the time of acceptance and the second at the end of the warranty period. No term of the Technology Agreement states that LBAC can terminate for convenience and walk away from those payment obligations. In fact, the opposite is true.

As previously stated, Section 12.4 specifically provides that, upon a termination for convenience, any deliverables that are "in process prior to the effective date of termination" must be paid. The termination caused an acceleration of all amounts due for the "in process" but completed deliverables. The sum of $600,000 to be paid at the time of Acceptance and the

**Exhibit** _B_
**Page** _3_ **of** _4_

L A W Y E R S
KMKB

J. Michael May, Esq.
Tavant Technologies, Inc. vs. LBAC, et al.
July 10, 2007                                                               Page 2

additional payment of $622,111.63, to be paid at the end of the warranty period during which
Tavant would earn a separate monthly warranty charge/payment.

      Threats against the shareholders of Tavant to "chill" Tavant's claims for payment will not
be taken lightly. California Courts recognize that an abuse of process will exist where the threat
or use of judicial process is done for an improper purpose. *Spellens v. Spellens*, (1957) 49 Cal.
2d 210. The Courts are loath to parties who use coercion and threats to obtain a collateral
advantage, such as the surrender of property. Extortion in the course of negotiations is
actionable in the State of California. *Templeton Feed and Grain v. Ralston Purina Company*,
(1968) 690 Cal. 2d 461.

      The ulterior motive behind the "implications of this situation" stated in your letter of
April 26, 2007, is an obvious attempt to coerce Tavant into discharging Long Beach and
successor-in-interest AmeriCredit's debt obligation to Tavant.

      Tavant will institute action shortly against LBAC and AmeriCredit to collect the
substantial sums due and owing Tavant pursuant to the terms of the Technology Agreement.
Please govern yourself accordingly.

      If you wish to discuss, contact me this week on Thursday or Friday. Otherwise, I will
assume that AmeriCredit and LBAC will continue to wrongfully deny the amounts owed and
"threaten" Tavant's owners and commit continued abuse of process. The purported claim
against Tavant's owners, who were the Sellers of LBAC, is not a defense to payment for the "in
process" deliverables due upon termination of the Technology Agreement.

      Sincerely,

      ROPERS, MAJESKI, KOHN & BENTLEY

      Michael J. Ioannou

MJI/nwb

Cc: Tavant Technologies, Inc.

Exhibit ___B___
Page ___4___ of ___4___

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>LONG BEACH ACCEPTANCE CORP., a Delaware corporation, qualified to do<br>business in the State of California; and DOES 1 through 50, inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>TAVANT TECHNOLOGIES, INC. | ENDORSED FILED<br><br>03 JUN 20  AM 11: 36<br><br>G. Duarte |

You have 30 **CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of the State of California, County of Santa Clara<br>191 N. First Street<br>San Jose, CA  95113 | CASE NUMBER:<br>*(Número del Caso):*<br>1 0 8 C V 1 1 5 5 0 2 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael J. Ioannou                    (408) 287-6262
Ropers, Majeski, Kohn & Bentley
50 W. San Fernando St., #1400
San Jose, CA  95113

| | | |
|---|---|---|
| DATE: **JUN 2 0 2008**<br>*(Fecha)* | Kiri Torre | Clerk, by _____, Deputy<br>*(Secretario)*                                *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  Long Beach Acceptance Corporation
   under:  ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc.<br>www.USCourtForms.com |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael J. Ioannou (SBN 95208)/Kimberly F. Whitfield (201190)
Ropers, Majeski, Kohn & Bentley
50 W. San Fernando St., #1400
San Jose, CA 95113
TELEPHONE NO.: (408) 287-6262    FAX NO.: (408) 918-4501
ATTORNEY FOR *(Name):* Tavant Technologies, Inc.

ENDORSED FILED

08 JUN 18 AM 11: 36

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Santa Clara**
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Downtown

CASE NAME: Tavant Technologies, Inc. vs. Long Beach Acceptance Corp., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 1 0 8 C V 1 1 5 5 0 4<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* Five
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: June 18, 2008

Kimberly F. Whitfield
(TYPE OR PRINT NAME)                                              ► *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/Wrongful Death
Product Liability (not asbestos or toxic/environmental) (24)
Medical Malpractice (45)
    Medical Malpractice–Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (not civil harassment) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (not medical or legal)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)
    Contract/Warranty Breach–Seller Plaintiff (not fraud or negligence)
    Negligent Breach of Contract/Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (not provisionally complex) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (not eminent domain, landlord/tenant, or foreclosure)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (arising from provisionally complex case type listed above) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (non-domestic relations)
    Sister State Judgment
    Administrative Agency Award (not unpaid taxes)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified above) (42)
    Declaratory Relief Only
    Injunctive Relief Only (non-harassment)
    Mechanics Lien
    Other Commercial Complaint Case (non-tort/non-complex)
    Other Civil Complaint (non-tort/non-complex)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (not specified above) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

JS 44 (Rev. 12/07) (cand rev 1/2008)

# CIVIL COVER SHEET    ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
TAVANT TECHNOLOGIES, INC.

**DEFENDANTS**
LONG BEACH ACCEPTANCE CORP.

**(b)** County of Residence of First Listed Plaintiff Santa Clara
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Michael J. Ioannou; Kimberly A. Whitman
Ropers, Majeski, Kohn & Bentley
50 W. San Fernando St. #11400
San Jose, CA 95113

Attorneys (If Known)
Robert B. Hawk; Chad E. DeVeaux; Christopher J. Langman
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025

ADR    C 08    03582    PVT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

E-FILING

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332; 28 U.S.C. § 1441(b)

Brief description of cause:
Breach of Contract and related causes of action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,222,111.63
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE."

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)    ☐ SAN FRANCISCO/OAKLAND    ☒ SAN JOSE

DATE
July 25, 2008

SIGNATURE OF ATTORNEY OF RECORD
Robert B. Hawk

American LegalNet, Inc.
www.FormsWorkflow.com

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.　　**(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

　　(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

　　(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.　　**Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.　　**Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.　　**Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.　　**Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.　　**Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**　　Example:　　U.S. Civil Statute: <u>47 USC 553</u>
　　　　　　　　　　　　　　　Brief Description: <u>Unauthorized reception of cable service</u>

VII.　　**Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.　　**Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

American LegalNet, Inc.
www.FormsWorkflow.com